## EBAUGH v. MULLINAX.

1. CHARGE ON FACTS.—A statement by the judge to the jury of undisputed facts developed by the testimony, is not a charge on the facts within the meaning of article IV., section 26, of the Constitution.
2. TAX SALES OF LAND—EXECUTION.—Before the land of a defaulting tax-payer can be validly sold for the non-payment of the taxes assessed thereon, there must be an unsuccessful effort made to enforce payment by distress and sale of the personal property of the defaulting tax-payer, the best evidence of which is an execution issued and a return of *nulla bona* thereon.

Before WALLACE, J., Berkeley, November, 1888.

This was an action by D. C. Ebaugh against A. J. Mullinax to recover damages for trespass on land. The defendant claimed title in himself under a deed from the Sinking Fund Commission. The judge charged the jury as follows:

*Mr. Foreman and Gentlemen of the Jury:* As I have stated to counsel, I think the act of the general assembly, "To raise supplies for the fiscal year 1880," is the act that covers this case. That act was passed by the legislature, as it declares, to raise supplies for the fiscal year commencing November 1st, 1880. "To raise supplies" is a phrase which means to levy a tax. It enacts that a tax shall be levied for the year mentioned, and then proceeds to fix the rate of the levy for the general expenses of the State, and for the expenses of the various counties in the State. And it provides where the money collected shall be deposited, and provides that the treasurer and auditor shall make collection of the tax, except with certain exceptions that are not material to this case, and makes the omission to perform any duty prescribed by the act by the public officers, on whom the duty of collecting the tax is imposed, a felony. It provides also for a poll tax and punishment for its non-payment, and provides as to the character of the funds in which the tax may be paid. And it provides further that it may be paid in two instalments: the first instalment to be payable from the first day of May to the first day of June, 1881, and the second instalment to be due and payable from the 15th of September to the 31st of October, 1881.

It provides further, that an additional payment, by way of interest, shall be paid if the payment is delayed until the later date.

It then provides that county treasurers, immediately upon the receipt of the tax duplicate for that year, shall cause a notice to be inserted twice in one daily newspaper, published at the county seat of his county, and goes on to prescribe the form of advertisement, and prescribes that the treasurer is to collect delinquent taxes and the mode for collecting them. That is the essential part of the act for this case. This land that is in dispute here was put up at public auction February 6th, 1882. It is alleged that at that sale there were no bidders, and that as there were no bidders, in pursuance of the general tax act, that the land was transferred to a book in the treasurer's office upon which lands that have been put up for sale and not sold, shall be put down as having been forfeited to the State. You have heard the testimony upon that subject. Whether that was done or not as a matter of fact, you are to decide. You have heard the evidence on that subject and you saw the book produced. The law requires that under the circumstances stated where land has been put up for sale and there have been no bidders, it shall be put on a book kept for that purpose, and listed as forfeited land, and that from that time the right, title, and interest of the owner is divested and has passed into the State.

Now, as to the methods of collecting the tax levied by this act of December, 1880. It provides, "Sec. 9. That when the taxes and assessments, or any portion thereof, charged against any property or party on the duplicate for the present fiscal year, together with the penalty of five per centum, if the said penalty shall have been incurred as aforesaid, shall not be paid on or before the 31st day of October, 1881, the county treasurer shall proceed to collect the same by distress, or otherwise, as now prescribed by law, together with a penalty of fifteen per cent. on the amount so delinquent; and if the amount of such delinquent taxes, assessments, and penalties shall not be paid on or before the fifteenth day of November, 1881, or be collected by distress or otherwise, then the same shall be treated as delinquent taxes on such real and personal property, and shall be collected by sale of such real and personal property as hereinafter prescribed."

That section prescribes that if by the 31st October, 1881, the taxes are not paid, then the county treasurer shall proceed, by distress or otherwise, to collect the taxes, with the addition of fifteen per cent. penalty. But if he should not do it, and if the taxes should not have been paid, then the tax becomes delinquent and shall be collected (of course, after that period) by the sale of such real and personal property as hereinafter prescribed. So far, so good. This tax was not paid on the 31st of October. It was not paid by the 15th of November; and so far as appears from anything that is before you, no steps were taken to enforce the collection of the tax on this land. Then under the operation of that section of the statute it became delinquent taxes. And those delinquent taxes were to be collected by the sale of the property, &c., as I have explained to you. So you will dismiss that section from your mind, because it does not apply to this case. The taxes were not paid by the 31st of October, and not by the 15th of November, and no steps were taken by the county treasurer to collect them. Under those circumstances, section 9 declares that they shall become delinquent taxes.

Now we will go to section 10: "All personal property subject to taxation shall be liable to distress and sale for the payment of taxes and assessments hereunder." The strict construction of those words means that the personal property subject to taxation shall be liable for the taxes and assessments that have been levied under this act, and that relates to both real and personal property. That word, "hereunder," makes a little confusion; but still it is there, and we have no right to strike it out. If it had said: For the payment of the taxes and assessments thereupon; that word, thereupon, would have limited the distress and sale of personal property upon the personal property, and made the subsequent part of the statute plain. But the word is "hereunder," and it would therefore make the personal property of any taxpayer subject to levy and sale for the payment of his whole tax, upon both real and personal property, if he had both. Then the section proceeds: "And at any time after any taxes or assessments shall become due according to the provisions of this act, the county treasurer, by himself or deputy, may distrain sufficient personal property of the party against whom such taxes

or assessment are charged, if the same can be found in his county, to pay the taxes or assessments so due, with any penalty charged or chargeable thereupon, and the costs that may accrue, and shall immediately advertise the same in three of the most public places in the town, ward, or district in which such property shall be distrained," &c.  Now, what, in brief, does section 10 enact?  It provides first, that the personal property shall be liable to be distrained for the taxes of every tax-payer, and it provides that if the taxes are not paid when due, that is, on the 31st of October, 1881, the treasurer or his deputy may distrain that personal property and sell enough of it, under the terms provided in the statute, to pay all the taxes.  He may do it.  In this case there is no proof that he did it.  He did not sell enough personal property, so far as the evidence goes, to pay the tax on this land in St. John's Berkeley.

Now, what does section 11 provide?  "Section 11.  All real property returned delinquent by the county treasurer, shall be sold on the first Monday in February, 1882, after due advertisement, as now provided by law," &c.  You will bear in mind that section 9 provides that, "wherever taxes and assessments are not paid, and where there has been no enforcement by the county treasurer, up to the 15th November," that the taxes are called delinquent taxes; the county treasurer has, therefore, under those circumstances, got to return it as delinquent.  You have heard the testimony as to whether he has returned it as delinquent or not.  If he has, then the act says: "Such property shall be sold on the first Monday in February, 1882."  Was it sold on the first Monday in February, 1882?  That is a question for you. You heard the testimony on the subject.  Was it sold after due advertisement, as now provided by law?  That is another question of fact for you.  The section goes on : "And thereafter, from day to day, until the whole amount thereof, as included in the delinquent list, shall have been sold ; and except as in this section provided, the county treasurer shall proceed, in reference to the sale of such delinquent real estate, according to the forms and with the conditions now prescribed and required by law."

What were the conditions required by law?  After the act of 1874, the general tax acts provide the methods by which taxes

shall be collected, and all the details and minutiæ in that part of the government are provided in the act of 1874. At the 117th section it is provided that each lot of land * * at any delinquent land sale, as provided in this act, and not sold for want of bidders, shall therefore become forfeited to the State of South Carolina, and thenceforth all the right, title, and interest of the former owner therein shall be vested in the State of South Carolina, and shall be designated by the county auditors as forfeited to the State of South Carolina," &c. Now, if you should find, as matter of fact, that this land was delinquent—that the taxes levied upon it were delinquent on the 15th November, 1881, and that no taxes were subsequently paid upon it, that had been levied upon it, according to law, and no proceedings were instituted against the personal property that resulted in the payment of the taxes on this real property, then it was competent for the county treasurer to sell that land as delinquent land; and if, at such sale, there were no bidders, then the land had to be transferred to a list described in the act as a list of forfeited lands. Was that done? That is a matter of fact for you to decide. If it was transferred to the list of forfeited lands, then the act goes on to provide that the sinking fund commissioner may sell the land to anybody who may pay all the taxes, assessments, and penalties that have accrued upon it up to the time of sale. Was that done? That is another question of fact for you to settle.

The requests of the plaintiff to charge I have to decline, because they all relate to the execution. I cannot conceive how the issuance of an execution was absolutely necessary to the validity of this title. Now, you will remember that the plaintiff submitted in evidence a receipt from the county treasurer to the plaintiff here, Mr. Ebaugh, for taxes assessed and paid upon this land in 1881, after the sale. I charge you, that if you should find that all the proceedings necessary to a valid sale, as I have explained them to you, under this act had been properly taken and the land sold on the 6th of February, 1882, that transferred all the right, title, and interest in the land to the State of South Carolina, and that he reacquired title in no sense whatever by the payment of that tax. He derives no more right from the payment of that tax in the land, than he would derive title in the land of his neighbor,

by paying the tax on it. All his right in the land was gone. He had no more right in it than anybody else. He could have gone forward and bought it again, but that was all the right he had. The receipt for the tax was without authority by the treasurer, and would convey no rights to anybody. I have here some requests to charge submitted by the defendant, but the defendant's counsel has withdrawn them. So I will not touch upon them.

As a general rule, the person who has the fee simple in land alone has the right to convey and sell it. The State having the right of eminent domain, can, under certain circumstances and conditions, sell it. But before any title can be conveyed to land to which a citizen has fee simple, either under judgment of the court, or proceedings to collect taxes, every single step prescribed in the authorization to sell must be performed, or no title is conveyed. It is a serious matter to sell a man's land. It is next to his right of living, the highest right that a citizen can hold, and the law surrounds it by every protection, reserving the condition that it shall contribute a necessary proportion towards its protection. If its owner does not do it, the law says it will be taken from him and put into the hands of another, who will discharge the public obligation. But the method by which it is taken from the owner and transferred to another must be conformed to in every particular, otherwise the law has not been obeyed—the requisite steps have not been taken, and no title has been transferred. That principle is conceded by counsel on both sides. Now, the testimony on that subject has been submitted to you. I have tried to explain to you what steps are necessary to convey a good title. Are you satisfied that all these steps were properly taken? If they were, then the defendant is entitled to a verdict. If they were not, then the plaintiff is entitled to a verdict.

I omitted to state to you in the outset, that Mr. Ebaugh was the original owner of the land, and it is alleged that it was sold by the county treasurer and purchased by Mr. Mullinax. Mr. Ebaugh denies Mr. Mullinax's title, on the ground that all the steps necessary were not taken, and seeks to recover damages from Mullinax for trespassing on his land. Mr. Mullinax sets up that he has a good title—that he got it from the county treasurer, and that he took all the steps necessary to make his title

24—34

good. If that is so, then the defendant has a good title, because
if he bought anything, he bought Mr. Ebaugh's title. If he has
not bought Mr. Ebaugh's title, then it is still in Mr. Ebaugh,
and you should find for the plaintiff. If you find for the plain-
tiff, you should say, "We find for the plaintiff so many dollars
damages." If you do not think that Mr. Ebaugh is entitled to
recover, you should say, "We find for the defendant."

The plaintiff requested the judge to charge the requests as
stated in the first three grounds of appeal hereinafter following,
and the same were refused.

The jury found for the defendant, and plaintiff moved for a
new trial on the grounds hereinafter stated as grounds of appeal.

The motion for new trial was refused, and plaintiff appealed on
the following grounds :

1. Because his honor refused to charge as requested by plain-
tiff, "If the jury find from the evidence that there was no tax
execution running throughout the whole County of Charleston,
and against all personal property of D. C. Ebaugh in said coun-
ty, the jury are instructed that this is a fatal irregularity in the
defendant's title."

2. Because his honor refused to charge as requested by plain-
tiff, "If the jury find that there is no evidence showing that a
tax execution was not returned '*nulla bona*' before the sale, the
jury are instructed that this would be a fatal irregularity in the
defendant's title."

3. Because his honor refused to charge as requested by plain-
tiff, if the jury find from the evidence that the tax execution (if
any was issued) could not be levied by the deputy, under the
practice of the county treasurer's office, outside of the city of
Charleston, then the jury are instructed that such an execution
is not a compliance with the law.

4. Because his honor erred in charging the jury that, "This
land in dispute here was put up at public auction, February 6th,
1882."

5. Because his honor erred in charging, "That section (9) pre-
scribes that if by the 31st of October, 1881, the taxes are not
paid, then the county treasurer shall proceed, by distress or other-

wise, to collect the taxes, with the addition of fifteen per cent. penalty.    But if he should not do it, and if the taxes should not have been paid, then the tax becomes delinquent."

6. Because his honor erred in charging that, "This tax was not paid on the 31st October; it was not paid by the 15th of November; and so far as appears from anything that is before you, no steps were taken to enforce the collection of the tax on this land.    Then under the operation of that section (9) of the statute, it becomes delinquent taxes, and those delinquent taxes were to be collected by the sale of the property, &c., as I have explained to you.    So you will dismiss that section from your mind, because it does not apply to this case."

7. Because his honor erred in charging that "the taxes were not paid by the 31st of October and not by the 15th of November, and no steps were taken by the county treasurer to collect them.    Under those circumstances section 9 declares that they shall become delinquent taxes."

8. Because his honor erred in charging that "section 9 provided that whenever taxes and assessments are not paid, and where there has been no enforcement by the county treasurer up to the 15th of November, that the taxes are called delinquent taxes.    The county treasurer has, therefore, under those circumstances got to return it as delinquent."

9. Because his honor erred in charging, "Now, if you should find, as matter of fact, that this land was delinquent—that the taxes levied upon it were delinquent on the 15th November, 1881, and that no taxes were subsequently paid upon it that had been levied upon it according to law, and no proceedings were instituted against the personal property, that resulted in the payment of the taxes on this real property, then it was competent for the county treasurer to sell that land as delinquent land.

10. Because his honor erred in charging, "The requests of the plaintiff to charge I have to decline, because they all relate to the execution.    I cannot conceive how the issuance of an execution was absolutely necessary to the validity of this title."

*Mr. Robert J. Kirk*, for appellant.

*Messrs. Mordecai & Gadsden*, contra.

September 12, 1891.   The opinion of the court was delivered by

MR. JUSTICE McIVER.   The plaintiff brought this action against the defendant to recover damages for certain trespasses alleged to have been committed by him on a tract of land claimed by the plaintiff.   The defendant, in addition to a general denial, sets up title in himself to said land, acquired at a tax sale made on 6th February, 1882.   At the trial it was admitted that plaintiff had title up to the time of the tax sale, and it was "proved that every step required to be taken by the various acts of the general assembly of the State for the proper carrying out of delinquent land sales, was in this instance strictly complied with; the only exception thereto claimed by the plaintiff being that there was no issuance of the tax execution, nor a return of *nulla bona* thereon—the defendant claiming that neither was necessary, and that even if it were, the testimony showed that the same had been practically complied with."

The foregoing extract from the "Case" is followed by the testimony relied on to show that the alleged requirement in reference to the issuing and return of the execution had been practically complied with.   But as the Circuit Judge held, and so instructed the jury, that the issuing of an execution was not necessary to the validity of the title set up by defendant, he made no ruling and submitted no question to the jury as to whether the alleged requirement of an execution and return thereon had been practically complied with, and therefore that matter cannot be considered.   The Circuit Judge having instructed the jury as above indicated, they found a verdict in favor of defendant, and plaintiff appeals upon the several grounds set out in the record, which practically make but two questions: 1st. Whether the judge erred in charging the jury upon the facts.   2nd. Whether there was error in holding that the issuing and return of an execution was an essential prerequisite to the validity of the tax sale.

The first question presents but little difficulty; and, indeed, was not discussed in the argument here by appellant's counsel. It is very manifest from a consideration of the whole charge that

the constitutional provision was not violated; but, on the contrary, every question of fact was fully and fairly left to the jury.
The utmost that can be said is, that in those portions of the charge in which error is imputed by the exceptions, the judge simply repeated to the jury certain undisputed facts, and this certainly was no violation, either in spirit or letter, of the constitutional provision.

The real controversy arises under the second question. There can be no doubt that before a man's land can be lawfully sold for the non payment of taxes, every step required to be taken by the law authorizing such sale must be shown to have been taken; in other words, the mode prescribed by the statute must be followed in every particular. This, indeed, is conceded, and therefore the practical question in this case is, whether the issuing of an execution or warrant against the personal property of the defaulting tax payer, and a return of *nulla bona* thereon, is an essential prerequisite to the exercise of the right to sell land or offer it for sale at a delinquent land sale. This depends upon the construction which should be given to the terms of the act of 1880 (17 Stat., 380), under which the tax in this case was levied—more especially the 9th and 10th sections of that act. Section 9 provides, so far as the matter under consideration is concerned, "That when the taxes and assessments, or any portion thereof, charged against any property * * * shall not be paid on or before the 31st of October, 1881, the county treasurer shall proceed to collect the same by distress or otherwise as now prescribed by law, * * * and if the amount of such delinquent taxes, assessments, and penalties shall not be paid on or before the fifteenth day of November, 1881, or be collected by distress or otherwise, then the same shall be treated as delinquent taxes on such real and personal property, and shall be collected by sale of such real and personal property as hereinafter prescribed."

So much of section 10 as is applicable to the present case reads as follows: "All personal property subject to taxation shall be liable to distress and sale for the payment of taxes and assessments hereunder; and at any time after any taxes or assessments shall become due, according to the provisions of this act, the

county treasurer, by himself or deputy, may distrain sufficient personal property of the party against whom such taxes or assessments are charged, if the same can be found in his county, to pay the taxes or assessments so due, with any penalty charged or chargeable thereupon and the costs that may accrue;" and after advertising the same for the time and in the manner prescribed, proceed to sell the same or so much thereof as may be necessary, unless said taxes, assessments, penalties, and costs are paid before the day appointed for the sale.

From an examination of these two sections, it seems to us that before any real estate can be sold at a delinquent land sale, besides other requirements which need not be mentioned here, as it is conceded that all the other requirements were complied with, that an unsuccessful effort must have been made to enforce the payment of the taxes on the land by distress and sale of the personal property of the defaulting tax-payer; and this can be best evidenced by issuing an execution against the personal property and showing that it had been returned *nulla bona.*

It will be observed that section 9 provides that when the taxes "charged against *any* property," which, of course, includes *real* as well as personal property, shall not be paid on the day specified, the county treasurer is imperatively required to proceed to collect the same by distress or otherwise, as now prescribed by law—the language is, "*shall* proceed to collect the same by distress," &c., and the section proceeds to declare that if such taxes shall not be paid, "or be collected by distress or otherwise," on or before a certain other day specified, "*then* the same shall be treated as delinquent taxes on such real and personal property, and shall be collected by sale of such real and personal property as hereinafter prescribed." The use of the word "*then*," italicized in the extract of the section just quoted, is very significant; for it necessarily implies that the legislature intended that, when taxes were unpaid upon "*any* property," whether real or personal, the first step which the county treasurer was required to take was by distress, and if that failed, *then*, not before, the land could be placed on the delinquent list and offered for sale as delinquent land. It is true that there is an omission in this section to declare in express terms that personal property, and not

real estate, shall be distrained; but this omission, more apparent than real, is supplied by the terms of the very next section, which authorizes the county treasurer to distrain sufficient *personal* property to pay the taxes and assessments levied under that act, and there is no provision, either in this section or in any other act, so far as we are informed, passed since the adoption of the present system, which authorizes a distraint of *real* estate; if, indeed, such a term can be properly applicable to that species of property.

So much of section 10 as relates to this matter reads as follows: "All personal property subject to taxation shall be liable to distress and sale for the payment of taxes and assessments *hereunder*, and at any time after *any* taxes or assessments shall become due according to the provisions of this act, the county treasurer, by himself or deputy, may distrain sufficient personal property of the party against whom *such* taxes or assessments are charged, if the same can be found in his county, to pay the taxes or assessments so due," &c., going on to provide how and when the personal property distrained may be sold. It seems to us that the words "hereunder," "any," and "such," which we have italicized in this quotation from the section, show very clearly that the intention was to authorize the enforcement of the payment of *any* taxes levied under that act, whether upon real or personal property, by distress and sale of *personal* property. The explicit declaration contained in the section is that *all* personal property, except such as may be exempt from taxation, shall be liable to distress and sale for the payment of taxes and assessments *hereunder*, which must necessarily mean either under that section or under the act in which the section is embraced. It cannot mean the former, for there are no taxes or assessments levied by that section, and therefore it must mean the latter, as there are taxes and assessments levied under the act. But the language following makes this more plain, where it is provided that "after *any* taxes or assessments" shall become *due according to the provisions of this act*, the county treasurer * * * may distrain sufficient *personal* property of the party against whom *such* taxes or assessments are charged" to pay the same, shows beyond all dispute that the purpose was, not to make the personal property of

the defaulting tax-payer liable only for the taxes on that species of property, but to make it liable for *any* taxes assessed under the provisions of the act, which embraced real as well as personal property as subjects of taxation.

It seems to us that the true construction of the 9th section of the act is, that when taxes upon *any* property, either real or personal, are unpaid on the day appointed for that purpose, the county treasurer must first proceed to enforce payment by distress, and if that mode proves unavailing by a day specified, *then*, and not before, the land may be placed on the delinquent land list and disposed of as provided by law; and that the purpose of section 10 was to declare what kind of property—personal property—should be liable to distress and sale for the non-payment of taxes, whether assessed upon either real or personal property. The scheme of the tax laws seems to be that, in enforcing the payment of taxes upon any species of property, the personal property of the defaulting tax-payer must first be exhausted before the sovereign right to sell the land—perhaps the homestead—can be exercised. This does not in any way interfere with the statutory provision that taxes shall be a first lien upon the property taxed; for without impairing the force and effect of such lien, it is entirely competent for the legislature to require that resort shall first be had to the personal property. It is well settled that while it is the duty of executors or administrators to pay a mortgage debt out of the personal property, that being the primary fund for the payment of debts, to the relief of the mortgaged premises, yet that does not impair the lien of the mortgage on the land covered by it, which may still be resorted to if the primary fund be insufficient. See *Wilson* v. *McConnell,* 9 Rich. Eq., 500, and the cases therein cited, as well as *Henagan* v. *Harllee,* 10 Rich. Eq., 285. So here, while section 170 of the General Statutes gives the State a lien on the property for the taxes assessed upon it, yet the law, as we have seen, providing that resort must first be had to the personal property does not impair the lien on the particular property upon which the taxes are assessed, which may still be enforced, if the primary fund shall prove insufficient.

It seems to us, therefore, that the Circuit Judge erred in instructing the jury that the issuing of an execution was not an

essential prerequisite, and thus practically withdrawing from the jury the question whether this requirement had been complied with.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the case be remanded to that court for a new trial.