### JOHNSON v. JONES.

1. Issues—Appeal.—In an action to set aside a deed where the defendant raises the issue of title in her, all issues referred to master by consent, on appeal from Circuit decree, this Court has no jurisdiction of findings of fact pertaining to issue of title.

2. Tax Deed—Sinking Fund Commission.—Failure to proceed against personal property of defaulting taxpayer before offering his lands for sale as delinquent, is a fatal defect which renders null and void a deed executed by Sinking Fund Commission on such sale.

3. Ibid.—Estoppel.—Where a husband bids off his own lands at tax sale for his wife, pays the bid with his own money, she knowing that

he had personal property enough to pay the taxes, and by reason of such sale not having changed her position in any way, nor made any expenditures, he is not estopped from attacking the deed.

4. IBID.—IBID.—FRAUD.—If the husband were instrumental in having the land offered for sale as delinquent, with intention of hindering the enforcement of a judgment against him, and the deed had been made in his lifetime, equity would have left the parties where it found them, with title in the wife; but if not made in his lifetime, the power conferred by him on officers to make it, was revoked and the title remains in him.

Before DANTZLER, J., Aiken, October, 1904.    Affirmed.

Action by Joe M. Johnson and Pope Catoe, as executors of Nancy Stevens, John Stevens and Martha Rutland against Nancy J. Jones.  The following is the Circuit decree:

"This cause was heard by me at the regular June term of the Court of Common Pleas for Aiken County.    It came on to be heard upon the testimony reported by the master, and the argument of counsel, and was fully discussed in open Court.    The complaint raised equitable issues as to the setting aside of the deed, but the answer raised distinctly legal issues for the recovery of the land in question by way of affirmative relief, and the order of reference being by consent of counsel, for the master to take the testimony, waived the trial by jury, to which the parties would have been entitled upon the issues raised by the answer of the defendant.

"The controversy in the action is concerning all that tract of land, situate in the County of Aiken and State of South Carolina, known as the Stevens' Homestead Pace, containing 200 acres, more or less, bounded on the north by lands of J. W. Rutland, and lands of Henry Fallaw; east by lands of T. S. Williams, and south by lands of Caddy Johnson, and west by lands of the estate of William Stevens, deceased.

"After careful consideration of the testimony as to the contention raised by the plaintiffs, I am satisfied that the deed made to Mrs. Nancy Jones, the defendant, by Mrs. Nancy Stevens, the testatrix of the plaintiffs, dated the 17th

September, 1902, and covering the land in question, must be set aside. It does not seem to me that there was any fraud or overreaching connected with the transaction by which Mrs. Jones obtained that title from her mother; but I am satisfied that Mrs. Stevens was so enfeebled by old age that she did not have mental capacity enough to understand what she was doing at the time she executed that deed, and I so find; and it is ordered and adjudged that said deed of September 17th, 1902, as aforesaid, be, and the same is hereby, set aside as null and void.

"It remains to consider the issues raised by the answer of the defendant, and that involves the question, who is the owner in fee simple of the tract of land described as aforesaid, which is the subject of this action? Did it belong to Nancy Stevens in fee simple, and did it pass under her will so that it could be controlled by her executors, the plaintiffs in this action, and the devisees under said will; or did it belong in fee simple to William Stevens, and pass under his will to his widow, Nancy Stevens, for and during the period of her natural life, and, at her death, to the defendant, Nancy Jones, in fee simple, at Mrs. Stevens' death? There is no question upon the testimony in the case, and I find as a matter of fact that William Stevens was the owner in fee simple of said land previous to the year 1876, and that he had owned, held, controlled and used it absolutely as his own for many years previous to that time; and the question is, did it ever pass out of him, except by the terms of his will? He died on the 13th September, 1890, and, previous thereto, had executed a legal will, which was duly probated and recorded in the office of judge of probate of Aiken County, whereby he devised said tract of land unto his widow, Nancy Stevens, for and during the period of her life, and, at her death, to his youngest daughter, Nancy Stevens, absolutely—he having, it seems from the testimony, during his lifetime, made ample provision for his other children. The plaintiffs produce a tax title from the Sinking Fund Commission of South Carolina, dated the 12th April, 1892, pur-

porting to convey to Nancy Stevens said land, and it is contended that said deed divested the title of William Stevens, and that, consequently, it did not pass by his will. This deed of the Sinking Fund Commission expressly declares that the land is sold as forfeited land, and said deed is based upon a tax sale made on December 1st, 1876, as forfeited lands, said sale being made by the auditor, but no deed, for some reason, having been made by him. Said lands had previously been offered for sale by the auditor, to wit: on the 9th June, 1876, as delinquent land, and forfeited to the State for want of bidders. It does not appear here why the title was not made in 1876, but it does appear that though the land was sold for taxes as the property of William Stevens, he actually bid off the same and paid the money, but had the bid put in the name of his wife, Nancy Stevens. I am satisfied as a matter of law, and so find, that this deed of the Sinking Fund Commission to Nancy Stevens, and the sale upon which it was based, said deed being dated the 12th April, 1892, is null and void. The deed states that it was for forfeited lands. It is well settled in South Carolina by our Supreme Court, in the case of the *State* against *Thompson*, 18 S. C., 538, that when a party interposes a forfeited land title, just such as this, the burden is upon him to show that every prerequisite previous to the same and to the giving of the title, as required by law, has been carried out, and that, if such steps are not shown, the same must fall. No such evidence has been given, or pretended to be given, in this case, and, to the contrary, there is evidence which will be considered hereafter, going to show that such prerequisites were not carried out. See, also, *Cook* v. *Pennington*, 15 S. C., 192; also Cooley on Taxation, 2d edition, page 517.

"But, to go a step further, the property could not be forfeited to the State or sold by the State as forfeited lands unless it had first become delinquent according to law; and I find as matter of law and fact from the evidence in the case, and the law on the subject, that it never became delinquent.

18—72

The evidence unquestionably shows that at the time the real estate in question was levied upon for sale at delinquent land sale, William Stevens, the defaulting taxpayer, was the owner of personal property of a considerable amount, which was more than was requisite to pay the taxes; and, further, that Mrs. Stevens, his wife, who was the alleged bidder at that sale, was cognizant of that fact. During the year for the taxes of which this sale was made, he returned for taxes in Wards Township, where the land was situate, $357 worth of personal property, and the testimony shows that he had considerable personal property around him, such as horses, buggies, etc. All this is sufficient under the authorities to declare that the land never became delinquent, and that the attempted sale thereof by the auditor was null and void. *Ebaugh* v. *Mullinax,* 34 S. C., 364, 13 S. E., 613; *Curtis* v. *Renneker,* 34 S. C., 494, 13 S. E., 664. The deed in question was not made by the auditor, as he was authorized and required to do, when the lands were sold in 1876 as forfeited lands, but for some unaccountable reason no deed was made until after the death of William Stevens, and then it was made by the Sinking Fund Commission, on the 12th April, 1892. I can find no authority whatsoever for the Sinking Fund Commission to make a deed of lands which were forfeited to the State in 1876, and can only find that the auditor was authorized to make such a deed, and he having made no such deed, it seems to me that, on that ground, and I so find, that the deed of the Sinking Fund Commission is null and void. Having found as aforesaid, that the deed by the Sinking Fund Commission, as aforesaid, of the tax proceedings, and the sales on which it claims to have been based, are null and void, the next question is, are there any other facts in the case which divest William Stevens of the title to the land in question, and which he devised by his will as aforesaid?

"It is claimed in argument that he is estopped from denying that the land passed to his wife, Nancy Stevens, by the tax sale because he bid it in in his wife's name at said sale.

This act of itself cannot amount to an estoppel against him, or those who claim under him, to divest him of the fee simple title to the land.   It is true, that he did bid in the land and put down his wife's name as the bidder, but there is no proof whatsoever that her money was paid; and the proof to the contrary is that he paid the money, and there is no pretense of proof that she, because of what was done at that sale, changed her position in any way, or went to any expenses or expenditure because of the act which is claimed as an estoppel against William Stevens, nor is there any proof that she was prejudiced in any other way thereby; and unless it was shown that she changed her position in some way, and went to expenses and made expenditures upon the faith of the act or was otherwise prejudied by the act, which was claimed as an estoppel, it cannot be held as such in law. *Bull* v. *Rowe,* 13 S. C., 370.

"It is further insisted by the plaintiffs that the land in question became the property of Nancy Stevens by adverse possession on her part as against William Stevens during his lifetime, and after the tax sale in question.   In vol. I. of the A. & E. Encyclopedia, 2d ed., page 789, is found the following clear definition of what is adverse possession: 'In order to constitute an effective adverse possession, there must be an ouster of the real owner, followed by an actual, notorious and continuous possession by the adverse claimant, with an intention on his part to claim in hostility to the title of the real owner.'   This quotation from this text book is fully sustained by all of the authorities in South Carolina, old and recent, and is the law that should apply to such cases.

"It is very clear to my mind from the testimony that Mr. Stevens undertook the scheme of transferring the title of this property through a tax sale to his wife in order to avoid the payment of what is called in the testimony the Warren, Wallace & Company debt, and that when he was satisfied that he would not be pushed further by that matter, he failed to consummate this tax sale by afterwards taking a title from the auditor; hence, it is clear that Mrs. Stevens, as she

got no tax title until after the death of Mr. Stevens, to wit: until the 12th April, 1892, when she acquired the title from the Sinking Fund Commission, that she had no color of title whatsoever upon which to base the claim of adverse possession, or even to begin such a claim. Besides that, the testimony clearly shows that there was no change of possession made at the homestead. The old folks went on together just as they were before, as man and wife, and there was no assertion of ownership to the world that Mrs. Stevens had become the owner of the property and that Mrs. Stevens was no longer the owner. The testimony shows that he used the place as his own, and received the income therefrom, and in all ways that it was considered as his property by the public. The mere fact that for eight years, as is shown by Auditor Wise, the property was listed for taxes in the name of Mrs. Stevens, is not sufficient to establish title by adverse possession, and that Mr. Stevens so remained in possession through that entire period claiming the property as his own, and then at the end of eight years, before his death, changed the property back in his own name on the tax books, so that I am constrained to find as matter of fact, that there was no acquisition of this tract of land by Mrs. Stevens during the lifetime of Mr. Stevens by adverse possession as in her favor against him. He died, as aforesaid, the 13th September, 1890, having previously by his will devised this land to her for life, and, at her death, to Nancy Jones absolutely. The testimony convinces me, and I so find, that she knew of the contents of her husband's will, had it read to her, recognized his right to devise the property and accepted it as devised to her for life, and in accordance with the law on the subject, she being the life tenant after his death, she returned the property in her own name.

"The testimony further shows, and I so find, that during the life tenancy of this property, which she had so accepted as aforesaid under the will of her husband, she declared that at her death this property was to go, according to the terms of the will of her husband, to the defendant, Nancy Jones,

thus showing that she recognized that she held the property under the terms of the will of William Stevens, and by virtue of it alone.    Mrs. Nancy Stevens having, as found as aforesaid, taken this property under the will of her husband, and having recognized it as coming to her in that way, she being a life tenant, cannot under the law, nor can those who claim under her, plead adverse possession against Mrs. Nancy Jones, who was the remainderman in fee simple of said property under said will of William Stevens.

"It is clear that adverse possession, under such circumstances, cannot be pleaded in law as against a remainderman. *Moseley* v. *Hankinson,* 25 S. C., 519; *Rawls* v. *Johns,* 54 S. C., 388, 32 S. E., 451; *Rice* v. *Bamberg,* 59 S. C., 509, 38 S. E., 209.

"There is nothing in the facts of the case which go to show that Mrs. Stevens, as a life tenant, so asserted her absolute ownership of the property as to amount to ouster of Mrs. Jones, even if, under the law, it were possible for her to oust her remainderman.    The fact that she took a deed from the Sinking Fund Commission on the 12th April, 1892, and died on the 25th December, 1902, is not sufficient from which to presume an ouster.    The facts in this case show that whilst Mrs. Jones knew something of the sale back in 1876, she had no knowledge or information sufficient to put her on inquiry which would give her the knowledge that Mrs. Stevens had obtained title from the Sinking Fund Commission on the 12th April, 1892, until a very few months before her mother's death.    Whilst there was no actual notice to Mrs. Jones of this fact, from whch any circumstances of ouster could be presumed, neither did she have constructive notice of the existence of such a deed, for the reason that it was not recorded in the office of the clerk of court of Aiken County, where it should have been recorded, according to law, but only in the office of the Secretary of State, and there is no law requiring its record there, or making its record there constructive notice of its existence.    I, therefore, find as matter of fact and law, that there

is nothing in the testimony to divest William Stevens of title in the tract of land in question, and that the same being his, he had the right to devise the same by his will, and that he having devised the same by said will to his wife for life, and to his daughter, Nancy Jones, in fee simple at the death of his said wife, and that Nancy Stevens having departed this life, the said Nancy Jones is the owner in fee simple of said tract of land, and entitled to recover the same from the plaintiffs in this action, who are in possession thereof.

"The defendant, Nancy Jones, by her answer, claims the recovery of the possession of the land, and $500 damages for the detention thereof. The only testimony in the case on the subject of damages is the testimony of Joseph Johnson, one of the executors and a plaintiff in this action, and he states that for the year 1903, after the executors took possession, they received $152 rent for the place. It seems that this amount of rent did not cover the use of the dwelling house and other houses, but was the rent for the arable lands and such houses as the tenant occupied. This amount should certainly be paid to the defendant. I cannot, and do not, pass upon her right as to any damages or rent which would accrue to her since the commencement of this action. That matter is left without prejudice to her future course as to the same.

"Wherefore, it is ordered, adjudged and decreed, that the defendant, Nancy Jones, have judgment against the plaintiffs in this action for the recovery of the tract of land described in the pleadings, and described heretofore in this decree, and judgment for the sum of $152 and the costs of this action, said costs to be taxed by the clerk of court, and to be entered in the judgment, and that execution do issue for the possession of the said property, for the money given as damages as aforesaid, and for the costs of this action in favor of the defendant against the plaintiffs."

Plaintiffs appeal on following exceptions:

"I. Because his Honor erred in ordering, adjudging and decreeing as follows: 'That the defendant, Nancy Jones, do

have judgment against the plaintiffs in this action for the recovery of the tract of land described in the pleadings and described heretofore in this decree and judgment for the sum of $152 and the costs of this action, said costs to be taxed by the clerk of court and to be entered into the judgment, and that execution do issue for the possession of the said property, for money given as damages as aforesaid, and for the costs of this action in favor of the defendant against the plaintiffs;' whereas, under the testimony and all the circumstances in the case, he should have found a decree in favor of the plaintiffs against the defendant for the recovery of the possession of the lands described, and for damages and costs of the action.

"II. Because his Honor erred in finding that the title to said tract or parcel of land was never divested by the tax sale in 1876, or by the tax title from the Sinking Fund Commission of South Carolina, dated 12th April, 1892, and that the said lands passed under the last will and testament of the said William Stevens, deceased; whereas, he should have found that the title of William Stevens was divested by the delinquent land sale, 9th June, 1876; that the said lands then became forfeited to the State for want of bidders; that at the sale thereof as forfeited lands had by the State of South Carolina, Nancy Stevens became the bidder; that she complied with the terms of said sale; that thereafter the said State held the legal title to said lands in trust for Nancy Stevens, she having the equitable title thereto; that upon taking the title from the Sinking Fund Commission, on the 12th April, 1892, the fee was vested in Mrs. Nancy Stevens, and that the said lands passed under her will at the date of her death, 25th December, 1902.

"III. Because his Honor erred in finding and holding as a matter of law that the deed of the Sinking Fund Commission, dated April 12, 1892, is null and void.

"IV. Because his Honor erred in holding that when a party interposes a forfeited land title, just such as this, 'the burden is upon him to show that every prerequisite previous

to the same, and to the giving of the title as required by law, has been carried out, and that if such steps were not showed, the sale must fall;' whereas, from all the facts and circumstances in the present case, he should have found that the burden of proof as to defects is on the party attacking the tax deed, which in this case was the defendant.

"V. Because his Honor erred in holding that under the facts and circumstances of this case, as a matter of law and fact, the lands in question 'never became delinquent,' and 'that the attempted sale thereof by the auditor was null and void.'

"VI. Because his Honor erred in holding as matter of law, that when the lands were sold in 1876, as forfeited lands, no deed was made until after the death of William Stevens (April 12, 1892), and then only by the Sinking Fund Commission, and that there is no authority whatsoever for the Sinking Fund Commission to make a deed of lands which were forfeited to the State in 1876, and that the said deed should have been made by the auditor, and that on this ground the deed of the Sinking Fund Commission, made in 1892, is null and void.

"VII. Because his Honor erred in holding that William Stevens, the defaulting taxpayer, was the owner of personal property more than was requisite to pay the taxes assessed upon said lands, and that his wife was cognizant of this fact, and that this personality, under the facts and circumstances here, should have been exhausted before going upon the lands, and that this is sufficient under the authorities to declare that the land never became delinquent, and that the sale thereof by the auditor was null and void.

"VIII. Because his Honor erred in holding that William Stevens was not estopped by his acts and conduct from denying that the lands, after the forfeited land sale, passed to his wife, Nancy Stevens, and that there is no proof that she complied with her bid at the forfeited land sale; whereas, he should have found and held that from the facts and testimony, the presumption of law and facts was that she did

comply with her bid at said sale; that William Stevens by his conduct and acts was estopped from denying that said lands passed to. his wife at the forfeited land sale, and the same passed under her will to the devisees therein named, and was no longer the property of the husband, and subject to his will.

"IX. Because his Honor erred in finding as matter of law from the testimony in the cause, 'that Mr. Stevens undertook the scheme of transferring the title to this property to his wife, in order to avoid the payment of what is called in the testimony, the Warren, Wallace & Co. debt, and when he was satisfied that he would not be pushed further by that matter, he failed to consummate this tax sale by afterwards taking a title from the auditor; hence, it is clear that Mrs. Stevens, as she got no tax title from the Sinking Fund Commission until after the death of Mr. Stevens, to wit: until the 12th April, 1892, when she acquired the title from the Sinking Fund Commission, that she had no color of title whatever upon which to have the claim of adverse possession, or even to begin such a claim. Besides that, the testimony clearly shows that there was no change of possession made at the homestead; the old folks went on together just as they were before, as man and wife, and there was no assertion of ownership to the world by Mrs. Stevens that she had become the owner of the property, and that Mr. Stevens was no longer the owner. The mere fact that for eight years, as shown by Auditor Wise, the property was listed for taxes in the name of Mrs. Stevens, is not sufficient to establish title by adverse possession, and that Mr. Stevens so remaining in possession through the entire period, claiming the property as his own, and then at the end of eight years, before his death, changed the property back in his own name on the tax book; so that I am constrained to find, as a matter of law, that there was no acquisition of this tract of land by Mrs. Stevens during the lifetime of Mr. Stevens by adverse possession as in her favor against him;' whereas, he shoud have found from the facts and circumstances just

to the contrary, and as a matter of law, that Mrs. Stevens had good color of title to said lands upon whch to base the claim of adverse possession, and that during the lifetime of her husband, she did acquire a title to said lands by adverse possession; and that the tax sales and the conveyance received thereafter from the Sinking Fund Commission were not directly attacked for fraud in the answer of the defendant, and could not on this ground be attacked collaterally.

"X. Because his Honor erred in finding that Mrs. Stevens was a life tenant under the will of her husband in these lands, and that 'she declared that at her death this property was to go according to the terms of his will to the defendant;' thus recognizing that she held the said property under the terms of the will of her husband, and by virtue of the same alone; 'Mrs. Nancy Stevens having, as is found as aforesaid, taken this property under the will of her husband, and having recognized it as coming to her in that way, she being a life tenant, cannot under the law forego those who claim under her, plead adverse possession against Mrs. Nancy Jones, who was the remainderman in fee simple of the property, under such will of William Stevens;' said finding and conclusion being contrary to the facts and circumstances and the law applicable to the case.

"XI. Because his Honor erred in holding and finding as follows: 'There is nothing in the facts of the case which go to show that Mrs. Stevens as a life tenant so asserted her absolute ownership of the property as to amount to ouster of Mrs. Jones, even though under the law it were possible for her to oust her remainderman. The fact that she took a deed from the Sinking Fund Commission on the 12th April, 1892, and died on the 25th December, 1902, is not sufficient from which to presume ouster. The facts in this case show that whilst Mrs. Jones knew nothing of the sale back in 1876, she had not knowledge or information sufficient to put her on inquiry which would give her the knowledge that Mrs. Stevens had obtained title from the Sinking Fund Commission on the 12th April, 1892, until a very few

months before her mother's death, whilst there was no actual notice to Mrs. Jones of this fact from which any circumstances of ouster can be presumed; neither did she have constructive notice of the existence of such a deed, for the reason that it was not recorded in the office of the clerk of the court of Aiken County, where it should have been recorded according to law, but only in the office of the Secretary of State, and there is no law requiring its record there, or making its record there constructive notice of its existence. I, therefore, find as matter of fact and law, that there is nothing in the testimony to divest the title of William Stevens in the tract of land in question, and that the same being his, he had the right to devise the same by his will, and that he having devised the same by said will to his wife for life, and to his daughter, Nancy Jones, in fee simple at the death of his said wife, and that Nancy Stevens having departed this life, the said Nancy Jones is the owner in fee simple of said tract of land, and entitled to recover the same from the plaintiffs in this action, who are in possession thereof;' whereas, he shoud have found from the testimony (even if Nancy Stevens took the lands in question under the will of her husband and became a life tenant thereunder) that there were circumstances from which an ouster could be presumed, that the defendant did have constructive notice of the existence of the deed, dated 12th April, 1892, from the Sinking Fund Commission to Mrs. Nancy Stevens; that the knowledge and information of Mrs. Jones were sufficient to put her upon the inquiry that the deed being a patent or grant from the State for forfeited lands sold and conveyed by the Sinking Fund Commission in 1892, was properly executed and recorded in the Secretary of State's office, and did operate as constructive notice of the claim of Mrs. Stevens to said land, and did amount to ouster of Mrs. Jones; and the Circuit Judge should have concluded that twelve years under said claim and ouster gave Mrs. Nancy Stevens a good title in fee to said lands by adverse possession, and that at her death the same passed under her will; and that she being

the owner thereof at the time her said will took effect, the same should be distributed thereunder and according to its terms.

"XII. Because his Honor erred in finding that Joseph Johnson, as one of the executors, received for the year 1903, after the executors took possession of the premises, for rent of said lands, the sum of $152, and that this amount should be paid to the defendant by way of damages, and in decreeing for her said sum; and that the right to damages for said rents since the commencement of this action are left without prejudice to her future course for the same; whereas, he should have found that the defendant not being entitled to the possession of the said premises, was not entitled to any damages whatsoever.

"XIII. Because his Honor erred in not finding and holding that, under all the facts and circumstances of this case, Mrs. Nancy Stevens acquired a good and valid title to said lands by virtue of the tax sales, and conveyance of the Sinking Fund Commission aforesaid by adverse possession thereof for more than twelve years under a claim of right, that her title to said premises could not be attacked collaterally, but only in and by a direct proceeding for that purpose.

"XIV. Because his Honor erred in finding and holding that the said lands passed under the will of William Stevens to his wife, Nancy Stevens, for life, and at her death, the defendant, Nancy Jones, was entitled to the possession thereof in fee, and to damages for withholding the possession thereof, and by rendering judgment in her favor for possession, damages and costs.

"XV. Because his Honor erred in finding and holding that the plaintiffs were not entitled to have the said lands distributed under the will of Mrs. Nancy Stevens, as prayed for in this complaint, the burden of proof being on the defendant to show that the said Nancy Stevens did not acquire a good and valid title to said lands under the tax sales for delinquent and forfeited lands, and the conveyance made to

her by the Sinking Fund Commission in 1892, the said Commission at that time being vested with the fee in all lands forfeited to the State for want of bidders, and alone entitled to convey the same to purchasers at forfeited tax sales in 1892, and the recitals in the said deed showing that the said Nancy Stevens had fully complied with terms of said sale, and the proof being before the Court that the sale had, for good cause, been postponed by the proper authorities until the 1st December, 1876.

"XVI. Because his Honor erred after finding as a matter of fact that Will Stevens undertook the scheme of a tax sale to defraud his creditor, Warren, Wallace & Co., in not holding that as William Stevens undertook this scheme of defrauding his creditors by the tax sale of 1876, he tainted his hands with fraud, and, therefore, neither he, nor Mrs. Jones claiming under him, can be allowed to attack the validity of that sale in this action, for 'he who comes into equity, must come in with clean hands,' and not having done so, no relief should be granted to the defendant by holding that William Stevens was not divested of his title by that tax sale."

*Messrs. Croft & Salley* and *Jas. F. Izlar*, for appellants. *Messrs. Croft & Salley* cite: *Question of title should be reviewed:* 37 S. C., 579; 41 S. C., 163. *Sale of personal property for taxes not required under act of 1874 as a condition prerequisite to sale of land:* 16 Stat., 9; 15 Stat., 764. *Personal property set aside as homestead exempt from distress:* 27 Ency., 2 ed., 782; 149 U. S., 181; 46 S. C., 252. *Tax sale passes prima facie title:* 15 Stat., 773; 40 S. C., 115.

*Mr. Jas. F. Izlar* cites: *Defendant is estopped from disputing title in mother:* Herm. on Est., 229, 334; 13 S. C., 355. *As to sale of forfeited lands:* 15 Stat., 731, 999, 539; 16 Stat., 558, 811; 22 S. C., 541; 25 S. C., 579; 16 St., 200; 31 S. C., 547. *Mrs. Stevens could hold adversely to husband under this deed:* 56 S. C., 170; 26 Ency., 2 ed., 403;

24 Ency., 2 ed., 408, 420, 421. *Weight to be given tax receipts:* 16 S. C., 143; 50 S. C., 293; 45 S. C., 312.

*Messrs. Hendersons* and *E. F. Strother,* contra. *Messrs. Hendersons* cite: *This Court will not review findings of fact:* Code of Proc., 11, 274, 288; 58 S. C., 457; 55 S. C., 360; 51 S. C., 560. *Tax sale does not divest title of Wm. Stevens:* 15 Stat., 731, 116; 34 S. C., 364, 494; 15 S. C., 192. *As to title in Mrs. Stevens by adverse possession:* 16 S. C., 43; 1 Ency., 795; 59 S. C., 507; 17 S. C., 53; 42 S. C., 268; 28 S. C., 468; 1 Cyc., 1056-8; 14 Am. St. R., 626, 539; 1 Am. St. R., 656; 17 Am. Dec., 629; 2 Bail., 603; 56 S. C., 216; 48 S. C., 28. *As to estoppel:* 13 S. C., 370; Big. on Est., 480.

*Mr. E. F. Strother* cites: *As to validity of will:* 28 Ency., 2 ed., 104; 2 Rich., 238; 49 S. C., 159; 6 Rich., 14; 7 Rich., 474; 4 McC. Ch., 107; 28 Ency., 99; 4 McC., 107; 65 S. C., 558.

August 1, 1905. The opinion of the Court was delivered by

Mr. Justice Gary. The plaintiffs brought this action to set aside a deed executed on the 17th of September, 1902, by Mrs. Nancy Stevens to the defendant, on the ground that Mrs. Stevens did not have mental capacity to make said deed. The answer of the defendant raised an issue of title. She alleged that independently of said deed she was the legal owner of the land, under the will of her father, William Stevens, by which he devised the land to her in remainder. His Honor, the Circuit Judge, rendered a decree in which he held that the deed was null and void, but that the defendant was the owner of the land in fee. The facts are fully stated in the decree which, together with the appellants' exceptions, will be set out in the report of the case.

The appellants' attorneys contend that the issues are only equitable; and, in any event, that the findings of fact by

the Circuit Judge can be reviewed by this Court.    The defendant in her answer specifically denies that Mrs. Nancy Stevens during her lifetime had legal title to and was seized and possessed in fee thereof.    She also set up the following defense: "This defendant alleges that she is the legal owner in fee simple of the land described in the complaint, and that the plaintiffs in this action have taken possession of said tract of land, and withhold the same from this defendant, who is the legal owner thereof." This was sufficient to raise the legal issue of title.    *Bank* v. *Peterkin,* 52 S. C., 236, 29 S. E., 546; *Corbett* v. *Fogle,* Part 312.    The following cases show conclusively that the findings of fact pertaining to the issue of title cannot be reviewed by this Court: *Johnson* v. *Johnson,* 44 S. C., 364, 22 S. E., 419; *Peoples* v. *Warren,* 51 S. C., 560, 29 S. E., 52; *Garvin* v. *Garvin,* 55 S. C., 360, 33 S. E., 458; *Corbett* v. *Fogle,* Part 312.

We will first consider the exceptions assigning error on the part of the Circuit Judge in ruling that the failure to proceed against the personal property for the non-payment of the taxes, before offering the lands for sale as delinquent, was a fatal defect, which rendered null and void the deed executed by the Sinking Fund Commission to Mrs. Nancy Stevens.    A similar question arose in the case of *Ebaugh* v. *Mullinax,* 34 S. C., 364, 374, 376, 13 S. E., 613.    After quoting sections 9 and 10 of the act of 1880 (17 Stat., 380), under which the tax in that case was levied, the Court uses this language: "From an examination of those two sections, it seems to us that before any real estate can be sold at a delinquent land sale, besides other requirements which need not be mentioned here, as it is conceded that all the other requirements were complied with, that an unsuccessful effort must have been made to enforce the payment of the taxes on the land by distress and sale of the personal property of the defaulting taxpayer; and this can be best evidenced by issuing an execution against the personal property and showing that it had been returned

*nulla bona."* Further on, the Court says: "It seems to us that the true construction of the 9th section of the act is, that when taxes upon any property, either real or personal, are unpaid on the day appointed for that purpose, the county treasurer must first proceed to enforce payment by distress, and if that mode proves unavailing by a day specified, *then,* and not before, the land may be placed on the delinquent land list and disposed of as provided by law; and that the purpose of section 10 was to declare what kind of property—personal property—should be liable to distress and sale for the non-payment of taxes, whether assessed upon either real or personal property. The scheme of the tax laws seems to be that, in enforcing the payment of taxes upon any species of property, the personal property of the defaulting taxpayer must first be exhausted before the sovereign right to sell the land—perhaps the homestead—can be exercised."

The Court, in *Curtis* v. *Renneker,* 34 S. C., 468, 495, 13 S. E., 664, construing statutory provisions similar to those in the present case, thus states the principle: "It only remains to consider the question as to the tax title. It being conceded that no execution or distress warrant had ever been issued to enforce payment of the taxes in arrear out of the personal property of the taxpayer, we think the question is concluded by our decision in *Ebaugh* v. *Mullinax, ante,* 364, and we refer to that case for the reasons upon which we rest our conclusion. It is true that in that case the question arose out of the failure to pay the taxes for the year 1880, while here the taxes in arrear were those for the year 1877; but as it is conceded that the terms of the two acts under which the taxes for those two years were levied are identical, so far as this matter is concerned, the reasoning in that case is appllicable here. Without considering any of the other alleged defects in the tax title, we think the failure to issue the execution against personal property was fatal." These authorities are conclusive of the question under consideration.

We will next consider the question whether the Circuit Judge erred in ruling that William Stevens was not estopped by his conduct, in bidding off the property in the name of his wife. If, when he bid off the property as aforesaid, the proceedings under which it was exposed for sale had not been fatally defective, she would have acquired an equitable right paramount to his title, and the deed executed by the Sinking Fund Commission would have had relation back to the time of the bid, although William Stevens had, in the meantime, died. Furthermore, if William Stevens had by his conduct induced action on the part of Mrs. Nancy Stevens by which she incurred the expenditure of money, or by which she changed her position to the prejudice of her rights, he would have been estopped from asserting his title, against her rights. But the Circuit Judge finds "that there is no proof whatsoever that her money was paid; and the proof to the contrary is that he paid the money and there is no pretense of proof that she, because of what was done at that sale, changed her position in any way, or went to any expenses or expenditure because of the act which is claimed as an estoppel against William Stevens, nor is there any proof that she was prejudiced in any other way thereby, * * *." He also finds that Mrs. Stevens was cognizant of the fact that William Stevens was the owner of personal property which was more than sufficient to pay the taxes on the land. Under these circumstances, the doctrine of estoppel cannot be invoked.

If William Stevens was instrumental in having the land offered for sale as delinquent, with the intention of hindering the enforcement of a judgment recovered against him, and the deed had been made during his lifetime, quite a different question would be presented from that under consideration. In that case he would not have had the right to the aid of the Court in the exercise of its chancery powers to set aside the deed, but equity would have left the parties where it found them—with the *legal* title to the land in Mrs. Stevens. The rights of the parties must be

19—72

determined as they existed at the time of his death, at which time the legal title was in him.    Mrs. Stevens could not then have asserted her equitable right against him, because the proceedings under which the land was offered for sale were fatally defective.    Even in that case, if the deed had been made during his lifetime, it might be said that the deed was, in effect, his act, under and by virtue of the power conferred by him on the officers of the law, or he might have ratified the sale.    But the deed executed after his death could not be referred to the proceedings under which the land was sold, because they were fatally defective.    Nor could it be referred to the power conferred by William Stevens on the officers of the law, because if there was such a power it was revoked by his death.    *Johnson* v. *Johnson,* 27 S. C., 309, 3 S. E., 606; *Givins* v. *Carroll,* 40 S. C., 413, 18 S. E., 1030; *Williams* v. *Washington,* 40 S. C., 457, 19 S. C., 1.

These conclusions practically dispose of all questions presented by the exceptions that are properly before this Court for consideration.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.