GIVINS v. CARROLL.

1. VOID SALE—SUBROGATION.—Where a sale of land under the power in a mortgage with general warranty fails to convey the legal title, for the reasons, (1) that the mortgagor was then dead, and (2) that the mortgagee made the deed in his own name, the purchaser will, nevertheless, be held in equity to have acquired by subrogation all of the mortgagee's interest and right in the mortgage as against the mortgaged premises.

2. IBID.—IBID.—And a second purchaser at a sale of this land, made under order of court for partition of the property of the first purchaser, is in turn subrogated to all the rights which the first purchaser had against this land.

3. IBID.—IBID.—MORTGAGE DEBT—CASES CRITICISED.—But the purchaser at the mortgagee's sale only acquired a claim against the land to the extent of the bid made and money paid by him, and not the larger sum then due on the mortgage, and the purchaser at the partition sale acquired only the rights and equities of such first purchaser, although he paid a greater sum. This case distinguished from Lowrance *v.* Robertson, 10 S. C., 31, and Bredenburg *v.* Landrum, 32 S. C., 215.

4. MORTGAGEE IN POSSESSION—RENTS—INTEREST.—And the attempted purchasers having been in possession of this land for a number of years, receiving rents of a fixed value, all of which were due to the heirs of the mortgagor at the end of the several years, and having expended moneys for taxes and improvements, and being entitled to interest on the mortgage debt as fixed by the sum paid by the first purchaser to the mortgagee, the balance due on the mortgage should be ascertained by taking the sum so paid by the first purchaser, calculating interest thereon from the date of purchase, but crediting the rents of every year at the date when payable, the first day of every January, and adding to the balance so found to be still due the sums paid for taxes and improvements.

5. FINDINGS OF FACT by master and Circuit Judge sustained.

Before FRASER, J., Barnwell, April, 1893.

Action by I. M. Givins, W. B. Lard, J. M. Lard, and R. R. Lard (the latter an infant), against E. D. Carroll, commenced October 1, 1892.

*Messrs. Patterson & Holman* and *B. T. Rice,* for appellants.

*Messrs. L. T. Izlar* and *S. G. Mayfield,* contra.

February 23, 1894. The opinion of the court was delivered by

MR. JUSTICE POPE. On the 16th day of February, 1878, one W. R. Lard executed a mortgage of a plantation of land in Barnwell County, in this State, containing 255 acres, to secure a debt of $1,000, to one Allen J. Weathersbee. The said Lard died in November, 1879, survived by the plaintiffs as his only heirs at law and next of kin. In January, 1880, Allen J. Weathersbee, claiming to act under a power of attorney embodied in the mortgage, sold such lands at public sale, and at the price of $700 conveyed said lands to one W. D. Birt, as the highest bidder. Subsequently W. D. Birt died, in the year 1883. All his heirs at law united in an action of partition, under which such tract of land was sold and conveyed by the master for Barnwell County to the defendant, E. D. Carroll, at the price of $1,025. The plaintiffs, as the heirs at law of said W. R. Lard, deceased, brought action to recover said lands from the defendant, as well as rents and profits. The defendant contested their right to recover, interposing for his protection

his subrogation to all the rights of Allen J. Weathersbee under the mortgage of W. R. Lard to him (Weathersbee.)

The matters came on to be heard before his honor, Judge Fraser, at the spring term of the Court of Common Pleas for Barnwell, on an agreed state of facts and exceptions to the report of the master, Patterson. The decree of the Circuit Judge sustains the right of defendant, Carroll, to be subrogated to all the rights of Allen J. Weathersbee under his mortgage for $1,000; that the plaintiffs were entitled to recover the rents and profits from the year 1880, which were fixed at the sum of $877, but required interest to be paid on the mortgage debt of $1,000 from 5th January, 1880, to date of decree, with an allowance for improvements and taxes for $173.35. These items allowed the defendant aggregated $2,094.24, from which he deducted $877, before referred to, thus leaving the land liable when sold to pay defendant $1,217.24. The land was ordered to be sold. The plaintiffs contend that such decree was erroneous, and should be reversed on four grounds; which we will now notice, but not in their order.

First. "Because his honor erred in holding that the sale of the land, mentioned and described in the complaint herein, by the mortgagee, Allen J. Weathersbee, and the conveyance by him to W. D. Birt, and the sale of the land by the master in a partition among the heirs of the said Birt, and the purchase of the same at the said sale by the defendant, Carroll, operated as a transfer of the Weathersbee mortgage to the said Carroll." We have been unable to agree with the appellant in this proposition, and will now give our reasons therefor. It may be proper to observe at the outset that the parties to this contention recognized the fact that under the decisions of this court the sale of the lands attempted to be made by Allen J. Weathersbee to W. D. Birt was void for two reasons: first, because the power of sale contained in the mortgage of Lard was revoked by the death of said Lard (*Johnson v. Johnson*, 27 S. C., 309); and, second, the deed executed by Weathersbee, the donee of the power, was executed in the name of the donee and not in that of his principal. *Webster* v.

*Brown*, 2 S. C., 429; *De Walt* v. *Kinard*, 19 *Id.*, 292; *Dendy* v. *Waite*, 36 *Id.*, 569.

Let us now resume the consideration of this ground of appeal. The intention of Weathersbee in his attempt to sell the lands in question on the 5th of January, 1880, was to obtain the payment of his mortgage, and when in furtherance of this intention he received $700 in cash from Birt, it was intended by him in law and in fact to part with his whole interest in his mortgage, so far as the same was a lien upon this tract of land. That his deed did not operate to convey a legal title to said land was Birt's misfortune, but that deed certainly operated to assign in equity such mortgage to Birt, so far as such land was concerned. In Lard's mortgage to Weathersbee there is a general warranty extending to Weathersbee, his heirs and assigns forever. Such a covenant extended to Birt. Mr. Jones, in his work on Mortgages, at section 1902 (2 vol.), says: "If the sale under the power is subsequently declared void for any irregularity, a purchaser who has paid the purchase money is subrogated to the rights of the mortgagee under the mortgage which is regarded as assigned to him * * *." This doctrine has been fully recognized and enforced by this court. *Stoney* v. *Shultz*, 1 Hill Eq., 495; *Bredenburg* v. *Landrum*, 32 S. C., 215.

But it is contended by the appellants that however true this may be as to Birt, yet that the defendant Carroll purchased at a judicial sale in an action by Birt's heirs at law, and that he only holds the deed of the master, which is confessedly without warranty. While all this is true, it must be remembered that the defendant Carroll, as the purchaser at such judicial sale, became invested with all the rights and equities touching this land that were owned at the time of its sale by the heirs of Birt. A very interesting statement of the law in this State on this matter is embodied in the opinion of the present Chief Justice in the case of *Lowrance* v. *Robertson*, 10 S. C., 31, where he said: "Now, by what alone do these plaintiffs" (Lowrance had bought at a sale made by the clerk of court for partition among Pearse's heirs at law) "bring this action? Certainly as the assignees of Pearse; for though the deed was not made directly to them by Pearse, yet Miller as

the clerk, under the order of the court conveyed to the plaintiffs all the right, title, interest, and estate of Pearse, including the right of action on Caldwell's covenant, upon its breach, as fully and completely as if Pearse himself had conveyed directly to the plaintiffs. This was distinctly decided in the case of *McGrady* ads. *Brisbane*, 1 Nott & McC., 104, as to a purchaser at sheriff's sale, and the doctrine has been repeatedly recognized since down to the case of *McKnight* v. *Gordon*, 13 Rich. Eq., 222. And if this be true as to purchasers at an involuntary sale made by the sheriff under execution, how much more true it would be as to a purchaser at a sale made by the proper officer under an order of the court for partition, or some other purpose necessary to the settlement of an estate where all the parties in interest are before the court." It follows, therefore, that this difference here suggested does not alter the status of this defendant, Carroll, as to this mortgage.

We will next consider the exception numbered by the appellant as third: "Because his honor should have held, admitting that the doctrine of subrogation could and did apply in Carroll's favor, that he could only hold and enforce the mortgage to the extent of seven hundred dollars, the amount paid by Birt at the illegal sale made by the said Allen J. Weathersbee, as the said Carroll claimed immediately under the said Birt." We think this exception should be sustained. When Birt paid Weathersbee $700, he thought he was purchasing the land in question at that price as its value. Such price so paid was not an extinguishment of the debt due Weathersbee by Lard, but only such portion of the debt as was secured by the land pledged to secure the debt. Equity would only subrogate Birt to such a proportion of the debt as was secured by the mortgage. The sale ascertained the portion of the debt so secured by the mortgage. This view does not, when well considered, impeach the correctness of the rule laid down by this court in the cases of *Lowrance* v. *Robertson*, 10 S. C., 31, *supra*, or *Bredenburg* v. *Landrum*, 32 S. C., 215, *supra*. In the first cited case, the inquiry was confined to the construction of the statute of this State fixing a rule for damages for breach of a covenant arising under a general warranty, where a vendee

27—40

had been evicted by title paramount; and the court there de-
cided that the words of the statute, "In any action or suit for
reimbursement or damage upon covenant or otherwise, the
true measure of damages shall be the amount of the purchase
money at the time of alienation, with legal interest," should be
applied to the alienation by Caldwell to Pearse, and not that of
Miller, as clerk to Lowrance.   Caldwell had received $5,000 as
the purchase money from Pearse, while Miller, as clerk, had
only received $4,000 from Lowrance, because it was Caldwell's
contract that was being enforced, and any liability of his exe-
cutor, Robertson, only existed by reason of Caldwell's contract.
In its last analysis it seems to us this cited case tends to sustain
the view we here suggest and maintain.   For it is Weathersbee's
contract with Birt which connects Carroll with this mortgage,
and in that view $700 was the portion of the debt as secured
by this mortgage that was assigned by operation of law by
Weathersbee to Birt, and through Birt's heirs to Carroll.

In the case of *Bredenberg* v. *Landrum, supra,* it is true this
court did hold that "where a party at the instance of the mort-
gagor advances less than the mortgage in the purchase of a
mortgage, judgment creditors of the mortgagor cannot object
to the recovery of the full original debt by the assignee," but
this was in a case where all the mortgagees had expressly as-
signed in writing all their interests in the mortgage to Landrum,
and where Landrum had only paid $3,000 for a $4,000 mortgage.
This court only recognized in that case the right of persons
under no disabilities to contract for the sale of their own prop-
erty at their own price, and denied to strangers any right to
question such conduct when it was confessedly *bona fides.*   In
the case at bar we are called upon to enforce an equity growing
out of a contract, and for which equity the parties themselves
made no direct provision.   Under such circumstances it seems
to us that such equity should be confined and made operative
within the limits of the transaction of the parties to it.

The second exception seems well taken.   Its language is:
"Because his honor erred in holding that the plaintiffs were
not entitled to interest on the rents of said land as the
same accrued; whereas, it is submitted that his honor

should have held that the rents should have been applied in the accounting annually to the satisfaction and discharge of the mortgage debt, and that he should have overruled the master's report in this respect." We do not mean to sustain the exception in the form in which it is presented. The underlying idea embodied in the exception amounts to this: If A is indebted to B by an obligation bearing interest, and B at the same time such indebtedness subsists is indebted to A for sums of money that accrue and become payable at the beginning of each year, when an account is taken in Chancery of such *mutual indebtedness*, if the sums of money due by B to A *exceed the interest due on the contract of A to B*, this excess should be applied to the extinguishment of interest, and thereafter to the principal, as far as it will do so. Take this as an illustration of our views: If A owes B a debt of $700, evidenced by a note wherein interest is fixed at seven per cent., at the end of the first year A owes B on such debt $749. But suppose, when the debt is contracted, B is in possession of a tract of land belonging to A, whose rental value is $50 for that first year, and for any cause this mutual indebtedness is carried into Chancery, will not A be held to have his debt due to B of $749 reduced by the $50 due by B to A for rent? Would not the same principle be applied if the debt had run at interest for several years, on the one hand, and the indebtedness for rent had run on for a corresponding period? This would be so, not because the rent bears interest—the payment of interest is a matter of contract—but because in equity such mutual indebtedness, accruing and maturing at stated intervals, is subject to such a rule.

Now, in the case at bar, on the first day of January, 1880, the heirs at law owed, so far as the assets of their ancestor descended to them would pay, to Carroll, the defendant, the sum of $700, at seven per cent. interest, and, therefore, this indebtedness on the 1st January, 1881, amounted to $749. But, on the other hand, Carroll owed these heirs at law, on the 1st January, 1881, the sum of $50 for the rent of their lands. The true amount of this indebtedness on 1st January, 1881, was the $749, less the rent of $50, to wit: $699. This last amount of $699, with interest, amounted, on the 1st January, 1882, to

$747.93, but Carroll owed the heirs rent on that day $50. The true amount due by plaintiffs to Carroll, on the 1st January, 1882, was $697.93. Plaintiffs owed Carroll, on 1st January, 1883, $746.79, less $50 for rent—really $696.79. Plaintiffs owed Carroll, on 1st January, 1884, $745.57, less $50 for rent—really $695.57. Continuing this process to the amounts due by the parties to each other, and governed by the findings of fact from which there is no appeal, down to the 1st January, 1892, the plaintiffs will be due as the balance of the mortgage debt due at that date $382.55. But at that date the plaintiffs also owed Carroll $173.35, for improvements and taxes. The whole indebtedness at that date would be $555.90, and this sum, with interest to 1st January, 1893, would amount to $594.81. Applying the rent for 1893, at $90 per annum, would leave the lands in the heirs' hands liable to pay Carroll $504.81. The decree in the Circuit Court should provide that if the heirs at law of Lard, the plaintiffs, do pay to the defendant the sum of $504.81, and the costs of this action, by a day certain to be named in the decree, the lands should be turned over to the plaintiffs, with any rents for the year 1894, but that in the event of their failure to pay these sums, that then the lands in question should be sold, and the proceeds of sale applied to costs and the debt of Carroll, and thereafter such proceeds as remain be paid to the plaintiffs.

The last exception relates to the findings of fact by the Circuit Judge and master. When scrutinized under the light of the decisions of this court, regulating the same, no error is manifested.

It is the judgment of this court, that the judgment of the Circuit Court be modified in the particulars herein indicated, and for that purpose that the action be remanded to that court, with directions that such modifications be there decreed.