## 8848

### KENDRICK v. MOSELEY.

### (81 S. E. 652.)

CHATTEL MORTGAGES. PRIORITY. MORTGAGES. RIGHTS OF CROP MORT-
GAGEE.

Where the mortgagor, after giving a crop mortgage for the next sea-
son, surrendered possession to the real property mortgagee without
having planted crops, and the proceeds of the crop raised by the
mortgagee together with the proceeds of the land upon foreclosure
did not satisfy the real property mortgage, the crop mortgagee has
no rights.

Before PRINCE, J., Spartanburg, June, 1913.   Reversed.

Action by O. S. Kendrick against M. A. Moseley.   From a judgment for plaintiff, defendant appeals.   The facts are stated in the opinion of the Court.

*Mr. J. C. Otts,* for appellant, cites: *Mortgagee in posses-
sion:* 62 S. C. 300; 67 S. C. 432; 162 U. S. 416; 37 S. C. 562; 20 S. C. 17; 3 Pom. Eq. Juris. 1189; 53 N. Y. 225; 86 N. E. 463; 37 S. C. 562; 20 S. C. 17; 15 Atl. 255. *Chattel interest subordinate to title to land:* 24 Am. Dec. 105.

*Title to land in mortgagee:* 62 S. C. 300; 18 So. 105; 63 Am. Dec. 151; 3 Pom. Eq. Juris. 1190, 1213-1219, 2432.

*Messrs. Butler & Hall,* for the respondent, cite: *Chattel mortgage of future crops good:* 14 S. C. 112; 27 S. C. 44; 43 S. C. 39; 45 S. C. 133; 10 S. C. 452; 5 S. C. 280; 1 Code of Laws 4106. *Distinguishes:* 18 So. 105. *Mortgagee in possession of lands:* V Stats. 169, 311; XVII Stats. 19; 26 S. C. 401; 36 S. C. 428; 10 S. C. 354; 12 S. C. 9.

May 7, 1914.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

Eugene Bates, being the owner of a tract of land, gave four mortgages on it. The last three, executed in 1908, 1910, and 1911, respectively, were owned by the defendant, Moseley. On January 22, 1912, Bates gave the plaintiff a mortgage on the crops to be grown on the land that year. The crop mortgage and those on the land were all duly recorded. Bates planted no crops; but, in February, 1912, he left the State, and Moseley took possession of the land, with his consent. Moseley cultivated the land, and raised and gathered certain crops on it. In the meantime, he commenced an action to foreclose his mortgages, and in November, 1912, the land was sold under the decree of foreclosure, and Moseley became the purchaser. The proceeds of the crops and the proceeds of the sale of the land, after payment of the costs of the action and the first mortgage thereon, were insufficient to pay the amount due on Moseley's mortgages. Plaintiff brought this action to require Moseley to account to him for the value of the crops raised on the land, and to have the same applied to the payment of his mortgage debt. The sole question is whether Moseley is so liable to the plaintiff.

He who takes a mortgage on property not then in existence takes it subject to the contingency that the property described in the mortgage will be brought into existence, or

acquired by the mortgagor, or by some one under the mortgagor, under such circumstances that the mortgagor will be the legal or equitable owner of it, or some part or interest in it. For certainly no one can mortgage property which he does not own, actually or potentially, and to which he never acquires any title, legal or equitable. The case is analogous to that of the assigning of wages to be earned in future. If the assignor fails to earn any wages, the assignee takes nothing. Such a mortgage or assignment covers a mere possibility, and he who takes it as security does so in reliance upon the honesty and ability of his debtor to bring into existence the thing mortgaged or assigned.

So, in this case, Kendrick took his mortgage subject to the contingency that Bates would raise the crops, or that some one would do so for him, or under him, under circumstances in which Bates would have title, legal or equitable, to them. Suppose neither Bates nor Moseley had raised any crops on the land, there would have been nothing to which the lien of Kendrick's mortgage could have attached. Bates raised none, nor did he have any title, legal or equitable, to the crops themselves which were raised by Moseley. Therefore there was nothing to which the lien of Kendrick's mortgage could have attached.

It cannot be contended that Bates was the owner of the crops raised by Moseley, or that he had any title, legal or equitable, to them, or to any part of them, which would have enabled him to recover them, or the value of them, from Moseley. Certainly he could not have given Kendrick any higher rights than he himself would have had. His right against Moseley was that of a mortgagor against his mortgagee in possession of the mortgaged premises, and that right is to require the mortgagee to account for rents received, or a reasonable rental value, where he uses and occupies the premises himself. But the mortgagor has no title, legal or equitable, to the crops raised by his mortgagee in possession, or by those under him. Indeed, it would be

unjust to the mortgagor to make his compensation for the use and occupancy of his land depend upon whether the farming operations of his mortgagee in possession were successful or unsuccessful. Therefore the measure of such a mortgagee's liability is made more certain, by requiring him to account to the mortgagor for reasonable rents or a reasonable rental value. *Givens* v. *Carroll,* 40 S. C. 413, 18 S. E. 1030, 42 Am. St. Rep. 889; 2 Jones on Mort., sec. 1122. And that is the measure of Moseley's liability to Bates. But Kendrick's mortgage does not cover the rents or the rental value of the land.

Aside from this, Moseley, having been put into possession under prior recorded mortgages of the land, had the right to apply the rents, or the rental value thereof, to the satisfaction of his mortgages, in the absence of any assignment thereof by the mortgagor prior to his possession. This right is not affected by the fact that his mortgages do not cover the crops to be raised on the land; or the rents of the land. It grows out of the fact that he was a mortgagee in possession.

Section 4106, vol. I, Code of Laws, 1912, has no bearing on the question at issue, for it is not necessary to decide whether Kendrick's mortgage would, after condition broken, have vested in him a legal or an equitable title to any crops which might have belonged to Bates, since, under the facts stated, it vested no sort of title in him to the crops raised by Moseley.

For these reasons, the judgment is reversed and the complaint dismissed.

MR. JUSTICE FRASER concurs in the opinion of MR. JUSTICE HYDRICK. MR. CHIEF JUSTICE GARY concurs in the result.

MR. JUSTICE GAGE, *dissenting.* The plaintiff sued the defendant for the proceeds of seven bales of cotton grown and gathered by the defendant upon a small parcel of land in 1912. The plaintiff's right is rested upon a chattel mort-

gage of the cotton, made in January, 1912, by the then owner, Bates, to secure a loan of $150, then made by Kendrick to Bates, for purposes not disclosed by the testimony. The answer is a general denial. Bates was overwhelmed with debt; he had made four mortgages on his small farm, three of which Moseley owned; and in February, 1912, he put Moseley in charge of his land and departed. There was nothing else for him to do. Moseley cultivated the lands that year and thereon grew the seven bales of cotton in dispute. In the fall of 1912 the mortgages were foreclosed; and the price thereof, with the price of the seven bales of cotton, did not satisfy the four mortgage debts. The plaintiff claimed the proceeds of the seven bales of cotton by virtue of his chattel mortgage thereon. The defendant claimed the proceeds of the seven bales of cotton by virtue of his position with reference to the land, to wit, a mortgage creditor in possession thereof. The master reported in favor of the plaintiff. The report was confirmed in a formal order. The defendant appeals.

There are nine exceptions, all charging errors of law, but there are not nearly so many real issues made. The prime contention of the defendant is based upon the doctrine, well established, and announced in *Sims* v. *Steadman,* 62 S. C. 304, 40 S. E. 677; and that is, when a mortgage creditor comes rightfully in possession of the mortgaged premises, neither the mortgagor nor one who claims under him may put the creditor out of possession, but may only redeem. The whole argument of appellant's counsel is made to sustain that contention, and no more. Of course, the doctrine contended for is sound, but it is not germane to the facts of this case. The plaintiff does not seek to oust the defendant from mortgaged land. The plaintiff is not, and has never been, the owner of the land. The plaintiff is not after the land or the proceeds of sale thereof.

The position of the parties is this: Kendrick got a legal statutory lien on the crop, and it was first in point of time to

any claim Moseley got subsequent thereto. Kendrick is not able to enforce that lien except by the aid of a Court of equity, and that he now asks. Paragraph 4, complaint. Moseley got thereafter a rightful possession of the land, and the crops which issued thereout, and which last was created by labor supplied by third parties and by live stock and fertilizer supplied by Moseley; and Bates is yet Moseley's debtor. Each party knew the circumstance of the other. Kendrick's right is legal only; Moseley's right is equitable only. But Kendrick cannot enforce his right except at the hand of a Court of equity; and that he now expressly asks. It is plainly a case for the application of the maxim of equity, "He who seeks equity must do equity."

It is conceded on all hands, and was so conceded below, that one-half the proceeds of the seven bales of cotton must go to the laborers who made it. What is Moseley's equity in the other half?

He finds it in his hands subject to a mortgage. His land mortgage creates no lien upon it, neither does his possession of it. He may not keep it, therefore, to pay his debt. But Moseley produced the cotton. Without him it would not have been. Manifestly it would not be just to require him to turn it into Kendrick's hands until he had taken out of it that which it cost to make it; and, under the testimony, that is the service of the live stock and implements which cultivated the crop, and the cost of the fertilizer which stimulated the crop. It is not clear that this question was made below, but some of the exceptions seem wide enough to cover it, and it is the justice of the case.

The cause ought to be remanded to the Circuit Court, to make inquiry about the matters indicated, and then to make an order in conformity with the law as herein stated. In all other respects the judgment ought to be affirmed.

MR. JUSTICE WATTS concurs in the dissenting opinion.