### WILLIAMSON & BROWN LAND & LUMBER CO. v. MULLINS LUMBER CO.

(Circuit Court of Appeals, Fourth Circuit. January 29, 1918.)

No. 1545.

1. TRESPASS ⬅20(3)—ACTIONS—EVIDENCE.

In an action for the cutting and removal of timber from land of which plaintiff is the legal owner, plaintiff may prove title prima facie by showing exclusive possession not obtained by disseisin of defendant.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. ADVERSE POSSESSION  43(4)—DURATION OF POSSESSION—CONSTRUCTION OF STATUTE.

> Under the law of South Carolina, which requires continuous possession of land for 10 years by one occupant or his heir or agent to give title by adverse possession, the possession of a grantee under a deed which, although by reason of technical defects it does not convey a legal title, conveys the equitable title cannot be tacked to the possession of the grantor.

3. ADVERSE POSSESSION  112—PERSONS ENTITLED TO CLAIM BY PRESCRIPTION.

> Under the law of South Carolina, as settled by decision, that exclusive adverse possession by successive occupants of land in privity with each other for 20 years raises a presumption of a grant at the beginning of the period, the presumption continues in favor of subsequent occupants, and it is not necessary that one who succeeded to the possession after the expiration of the first 20 years should show a perfect chain of legal conveyances from his predecessor, who was in possession at that time, although he takes subject to any conveyance or lien given or created by any preceding possessor under whom he claims and of which he had notice.

4. MORTGAGES  534—FORECLOSURE SALE—RIGHTS ACQUIRED BY PURCHASER.

> A purchaser at a foreclosure sale under a mortgage, in a suit to which a grantee of the mortgagor was not made a party, does not obtain a legal title, but only an equitable assignment of the mortgage, nor has he the rights of a mortgagee in possession, unless he takes possession before the lien expires by limitation.

> Connor, District Judge, dissenting.

In Error to the District Court of the United States for the Eastern District of South Carolina, at Florence; Henry A. Middleton Smith, Judge.

Action at law by the Williamson & Brown Land & Lumber Company against the Mullins Lumber Company. Judgment for defendant, and plaintiff brings error. Reversed.

Henry E. Davis and F. L. Willcox, both of Florence, S. C. (Willcox & Willcox, of Florence, S. C., on the brief), for plaintiff in error.

W. F. Stevenson, of Cheraw, S. C., and James W. Johnson, of Marion, S. C., for defendant in error.

Before KNAPP and WOODS, Circuit Judges, and CONNOR, District Judge.

WOODS, Circuit Judge. The only question before us is whether the District Judge was in error in granting an involuntary nonsuit at the close of the plaintiff's evidence. The complaint alleges that the plaintiff was the owner and entitled to possession of the land in dispute, and that in 1913 "the defendant, well knowing that the plaintiff had acquired the ownership of the property in question and was entitled to the possession thereof, willfully and wantonly entered upon the tract of land and cut and removed the timber from 391 acres thereof," to the damage of the plaintiff $15,000. The defenses involved were: First, a general denial; and, second, possession of the defendant under paramount title.

 For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The plaintiff introduced the following documentary evidence: Deed from C. W. Elliott to Butters Lumber Company, dated June 29, 1896, recorded August 26, 1897; deed from Butters Lumber Company to Cape Fear Lumber Company, dated December 4, 1899, entered on the records of Horry county January 17, 1900, ineffectual to convey the legal title, because it had no witnesses; deed from Cape Fear Lumber Company to the plaintiff, Williamson & Brown Land & Lumber Company, October 28, 1907, entered on the records of Horry county March 6, 1908, also ineffectual to convey the legal title, because it had no witnesses. This deed was re-executed by an instrument duly witnessed on September 13, 1910, recorded September 20, 1910. To show that the defendant also claimed under C. W. Elliott, the plaintiff introduced a mortgage of C. W. Elliott to Armon G. Strickland dated October 31, 1891, recorded January, 1893; judgment record of the foreclosure in an action commenced in 1910; deed from W. L. Bryan, clerk of the court, under the foreclosure, to Chas. K. Gerrald, dated May 1, 1911, recorded May 1, 1911; deed from C. K. Gerrald to Mullins Lumber Company, dated August 25, 1911, recorded September 5, 1911. The Butters Lumber Company, to whom Elliott had conveyed before the foreclosure, was not made a party to the foreclosure suit. As evidence of title by possession, the plaintiff also introduced testimony tending to show that Elliott had been in possession of the land for about 30 years before his conveyance to the Butters Lumber Company, and that the Butters Lumber Company, Cape Fear Lumber Company, and the Williamson & Brown Land & Lumber Company had successively held possession from the date of the conveyance to the Butters Lumber Company to the commencement of this action.

[1] The action is not to recover the possession of the land from the defendant, for it was not alleged that the defendant was in possession. It is not an action for the mere invasion of the plaintiff's possession by the defendant as a trespasser, for there was no allegation that the plaintiff was in actual possession at the time of the alleged trespass. The cause of action, therefore, presented by the plaintiff, was a cutting and appropriation of timber by the defendant as trespasser, and its liability to the plaintiff as owner of the legal title. This put the title in issue. Nevertheless, the plaintiff would have proved a good title prima facie by showing on the trial its own exclusive possession, not obtained by disseisin of the defendant. The law is thus stated in Beaufort Land & Investment Co. v. New River Lumber Co., 86 S. C. 358, 68 S. E. 637, 30 L. R. A. (N. S.) 243:

"As we have seen, possession not obtained by a tortious act is prima facie evidence of title, and upon this the plaintiff may rest until the defendant justifies his invasion of the possession by proving either title in himself or a license to enter from the true owner. We conclude, therefore, that, if the plaintiff held possession of the land, not acquired by the disseisin of the defendant, it was entitled to hold the land, and to recover of the defendant damages for invasion of its possession, and for the cutting of timber, unless the defendant proved title in itself, or a license from one proved to be the true owner, and that the court was in error in' charging otherwise."

See Cathcart v. Matthews, 91 S. C. 464, 74 S. E. 985, Ann. Cas. 1914A, 36.

When a plaintiff puts his title in issue, this presumption of title from possession against the defendant as a trespasser may be overcome by proof offered in the course of the trial, either by the plaintiff or defendant. Here the plaintiff, not content to rest on its evidence of possession and of defendant's trespass on that possession, undertook to show that it had obtained a good legal title: First, under the statute of limitations by adverse possession of one of its predecessors in title for 10 years; and, second, by presumption of a grant from the state or the true owner by adverse possession of successive occupants in privity with the plaintiff and with each other for the period of 20 years. If the evidence was sufficient to support a reasonable inference of title in the plaintiff, either by a single possession under the statute, or by successive possessions creating the presumption of a grant, the judgment of nonsuit must be reversed.

[2] The rule in South Carolina, differing from that in other jurisdictions, is that title can be acquired under the statute of limitations only by continuous adverse possession for 10 years of one occupant or his heir or agent. Successive trespasses, even when connected by formal deeds, cannot be tacked, to make out the statutory period of 10 years. McLeod v. Rogers, 2 Rich (S. C.) 19; Pegues v. Warley, 14 S. C. 180; Bryan v. Donnelly, 87 S. C. 388, 69 S. E. 840. Under this rule the District Judge was clearly right in holding that the plaintiff had not made out a title in itself by adverse possession. None of the occupants under whom plaintiff claims held continuous adverse possession for 10 years, except Elliott. Elliott's possession for 30 years made a good title in him, which he conveyed to Butters Lumber Company. But the title thus acquired by the Butters Lumber Company under the statute of limitations by virtue of the adverse possession of Elliott, its grantor, could not avail the plaintiff because the paper purporting to be a deed from the Butters Lumber Company to the Cape Fear Lumber Company, which conveyed to the plaintiff, was ineffectual to convey the legal title for lack of witnesses. This break in the chain was fatal to the plaintiff's claim by adverse possession of Elliott, a predecessor in title for 10 years under the statute of limitations.

It is insisted, however, that the Cape Fear Lumber Company, which conveyed to plaintiff, acquired a good title under the statute by adverse possession from December 4, 1899, to September 13, 1910, when it made a valid conveyance of its interest to the plaintiff. This contention rests on the erroneous conception that the possession of the plaintiff was the possession of the Cape Fear Lumber Company up to the day that it executed a valid conveyance to the plaintiff. The execution by the Cape Fear Lumber Company on October 28, 1907, of the paper intended to convey the title and the payment of the purchase money, which it recited, less than 10 years after the beginning of the alleged possession of the Cape Fear Lumber Company, was at least an equitable conveyance at that time, and the possession under it thereafter by the plaintiff was not under the Cape Fear Lumber Company, but adverse to it and all the world. Ellison v. Cathcart, 1 McMullan (S. C.) 5; Bank v. Smyers, 2 Strob. L. R. (S. C.) 24;

Watts v. Witt, 39 S. C. 356, 17 S. E. 822; Betts v. Gahagan, 212 Fed. 120, 128 C. C. A. 636.

[3] The next inquiry is whether the evidence of adverse possession for more than 20 years in the aggregate by successive occupants in privity with each other ending with the plaintiff's possession tended to show title in the plaintiff. In South Carolina exclusive adverse possession of successive occupants in privity with each other raises the presumption of a grant from the state or the true owner at the beginning of the period. This rule is not founded on any statute of limitations, but is a rule of law adopted by the courts for the repose of the title of the person in possession. Arthur v. Arthur, 2 Nott & McC. (S. C.) 96; Stockdale v. Young, 3 Strob. 501, note; Lewis v. Pope, 86 S. C. 285, 68 S. E. 680. There was evidence of adverse possession in the successive holders in privity with each other from Elliott to the plaintiff, which, tacked together, made in the aggregate adverse possession for more than 20 years. Against the inference that these possessions would warrant the jury in finding the title in the plaintiff, the defendant submits this argument: The presumption from 20 years' successive possession is that a good conveyance was made at the beginning of the period of 20 years, and not at the end. Trustees v. McCully, 11 Rich. 424; Thompson v. Brannon, 14 S. C. 542; Trustees v. Jennings, 40 S. C. 168, 18 S. E. 257, 891, 42 Am. St. Rep. 854; Metz v. Metz, 48 S. C. 472, 26 S. E. 787. The grant must therefore be presumed to have been made to Elliott, the first holder, who was in possession at the beginning of the period, and not to the plaintiff, who was in possession at the end; since the title is presumed to have been in Elliott at the beginning, the plaintiff cannot recover unless he can show a perfect chain of legal conveyance from Elliott to himself.

The unsoundness of this view and the impossible result to which it would lead are made clear by the attempt to apply it. A. asserts title by successive possessions without legal conveyances of persons in privity with each other and with him. If he proves his own adverse possession for 9 years, the possession of B., under whom he entered, for 9 years, and the possession of C., under whom B. entered for 3 years, he has made out his title by presumption. But under defendant's theory of the law, if A. proves his own possession for 9 years and the possession of B., under whom he entered for 20 years, he fails, because he has proved title by presumption in B., and has not proved that the legal title has passed from B. to him by legal conveyance.

We venture to think, both on principle and authority the law may be thus stated: The successive possessions for 20 years give rise to the presumption of a grant to the first taker at the beginning. Starting with the first taker, the successive adverse possessions may be tacked to make out the full period of 20 years from which a good title is presumed in the last taker against all persons who are strangers in title to the successive possessors in privity with each other claiming the land as their own. This rule, that the possessions of successive holders in privity with each other for 20 years, though without formal deeds of conveyance from one to the other, is sufficient to confer good

title on the last holder against all the world, except those who have a superior claim from one of the preceding successive holders, is settled by authority in South Carolina. The exact relationship of privity between the successive holders, whether created by parol gift, sale, or otherwise, is of no concern to the outside world. The purpose of the presumption from lapse of time is to quiet the title of the last holder found in possession after 20 years of connected adverse possession.

This is decided and illustrated in Thomson v. Peake, 7 Rich. (S. C.) 353, where the last holder was held to have good title to the land on proof of successive adverse possessions for 20 years of those in privity with him without proof of successive formal conveyances. 2 Washburn on Real Property, 348. "The lapse of 20 years is sufficient to raise the presumption of a grant from the state, of the satisfaction of a bond, mortgage, or judgment, or of a grant of a franchise or the payment of a legacy, or almost anything else that is necessary to quiet the title of property." Riddlehoover v. Kinard, 1 Hill, Eq. (S. C.) 376; Hutchinson v. Noland, 1 Hill (S. C.) 222; Young v. McNeill, 78 S. C. 143, 155, 59 S. E. 986. It follows that the plaintiff, by its evidence of successive possession of persons in privity of plaintiff and with each other, commencing with Elliott, made a case for submission to the jury of title by presumption for 20 years' consecutive possessions.

[4] But each successive possessor with notice takes subject to any conveyance or lien created by the act of any preceding possessor under whom he claims. This is on the familiar principle that, as one in possession cannot dispute the title of the person under whom he claims, he is bound by the conveyance of the land and liens placed on the land by any such person of which he has notice, either actual or constructive, before the time of his own adverse entry. Applying this principle, Butters Lumber Company and the plaintiff, claiming by successive possessions from it, were bound by the antecedent mortgage placed on the land by Elliott, the first taker from whom they derived title. Hence, if the mortgage had been foreclosed in an action in which the holder of the legal title was a party defendant, and the Mullins Lumber Company had acquired title under the foreclosure, its title would be good against the plaintiff. Under different conditions the principle was discussed and applied in Coleman v. Coleman, 71 S. C. 518, 51 S. E. 250.

But the defendant is not in a position to avail itself of this rule, for the reason that it derived no title from Elliott under the mortgage, and never had any right as assignee of the mortgage to assert against the plaintiff a claim to hold the land as mortgagee in possession. When the suit for foreclosure was commenced in 1910, Elliott had conveyed the land to Butters Lumber Company by deed dated in 1896, recorded in 1897, and the Butters Lumber Company was not made a party to the foreclosure suit. Hence Gerrald, the purchaser at the foreclosure sale, obtained no title to the land, but only an equitable assignment of the mortgage. Givins v. Carroll, 40 S. C. 415, 18 S. E. 1030, 42 Am. St. Rep. 889; Williams v. Washington, 40 S. C. 457, 19 S. E. 1; Brobst v. Brock, 77 U. S. (10 Wall.) 519, 19 L. Ed. 1002; Bryan v. Brasius, 162 U. S. 415, 16 Sup. Ct. 803, 40 L. Ed. 1022. His attempted con-

veyance in turn operated as an equitable assignment of the mortgage to the defendant. It follows that the defendant had no title whatever from Elliott, and could assert no right against the plaintiff, based on the theory that it acquired title from a common source.

Nevertheless, if the defendant was a mortgagee holding possession of the land, acquired without force or wrongdoing at the time of the commencement of this action, it would be entitled to hold possession against the plaintiff until payment of the mortgage. Bailey v. Bailey, 41 S. C. 338, 19 S. E. 669, 728, 44 Am. St. Rep. 713; Sims v. Steadman, 62 S. C. 304, 40 S. E. 677; Bryan v. Brasius, 162 U. S. 415, 16 Sup. Ct. 803, 40 L. Ed. 1022. Assuming the possession of the defendant under the claim of assignment of the mortgage at the time this action was commenced, this possession could not avail against the plaintiff as that of a mortgagee in possession, for the reason that at the time of the entry of defendant in 1913 the mortgage had been extinguished as a lien by a lapse of time. Section 3535 of Code of Laws of South Carolina, 1912, provides that no mortgage "shall constitute a lien upon any real estate after the lapse of twenty years from the date of the creation of the same," except upon entry on the record of an acknowledgment, which does not appear here. In Lyles v. Lyles, 71 S. C. 391, 51 S. E. 113, it was held that under this statute the lien of a mortgage is not extinguished until the lapse of 20 years from the maturity of the mortgage debt. The date of the maturity of the debt does not appear in the record, but in the absence of evidence of the date of maturity the rule is that the debt will be considered immediately due. Harrison v. Cammer, 2 McCord (S. C.) 246; Wilks v. Robertson, 3 Rich. (S. C.) 182; 2 Daniel, Neg. Inst. 88; 1 Jones on Mort. 75. It does not help the defendant to assume that a payment of $10 made at the date of the mortgage was payment of interest, indicating that the debt did not mature until October 31, 1892, a year after the date of the mortgage, for the defendant did not enter until 1913, more than 20 years after October 31, 1892.

The conclusion that under the evidence the defendant had no valid claim to possession under Elliott, either as grantee or mortgagee in possession, eliminates all questions of common source of title and the right of a mortgagee in possession, and places the defendant in a position of standing on its alleged possession unconnected with Elliott, the source of the plaintiff's claim.

The last point made by the defendant is that the statute above cited (Civil Code, § 3535) is not available to the plaintiff, because section 147 of the Code of Procedure, relating to the time of the commencement of actions, provides that the time does not run in favor of one who is out of the state. This section obviously has no effect to exclude foreign corporations from the benefit of section 3535 of the Civil Code relating to the extinguishment of liens by lapse of time.

On the record as presented, we conclude that the District Judge erred in ordering an involuntary nonsuit, first, because evidence of possession at the time of the alleged trespass by the defendant was prima facie evidence of title; and, second, because the evidence of possessions of successive holders in privity with the plaintiff and with

each other was evidence of a grant to the first holder which inured to the benefit of the plaintiff, the last holder.

Reversed.

CONNOR, District Judge (dissenting). I regret that, after anxious consideration, I find myself unable to concur in the conclusion reached by the court. I concur, without hesitation, in the process of reasoning and the conclusions stated, forcibly and clearly, in the opinion of Judge WOODS, in every respect, save the last proposition.

The title was in Elliott prior to his conveyance to the Butters Lumber Company. His title is founded upon the law of South Carolina, by which, after 20 years' adverse possession, under a claim of right, a presumption arises that a grant was issued by the state, or deed executed by the true owner to the person holding such possession. This presumption is indulged because experience has justified the conclusion, when possession for this period is shown, that a grant or deed has been executed, which has either been lost or destroyed. It has, for its purpose, the security of titles. Ricard v. Williams, 7 Wheat. 109, 5 L. Ed. 398. The principle is clearly stated in Ellen v. Ellen, 16 S. C. 140:

"Title to land growing out of long-continued possession—long enough to presume a grant, deed or other muniment of title—attaches at the beginning of the possession, in a presumption of law, that a deed was executed at that time which has since been lost."

This rule of law is not peculiar to South Carolina, but obtains, either by decisions of the court, or by legislative enactment in all of the American states—differences being found only in respect to the period of time during which possession is required to raise the presumption. In the light of the evidence in this case, the court takes it, as a fact, that Elliott either had a grant from the state, or a deed from the true owner. He conveyed to the Butters Lumber Company thereby vesting a perfect title in that company. This title may be divested:

(1) By a deed executed in accordance with the statute of South Carolina; it is conceded that no such deed was introduced in evidence.

(2) By an ouster, or disseisin, under color of title, followed by a continuous possession, in the disseisor, for the full period of 10 years; this is not shown.

(3) By possession, without any connection either of possession, or claim by those in possession, for 20 years.

The Butters Lumber Company undertook to convey to the Cape Fear Lumber Company by deed, ineffectual, because not properly executed —January 17, 1900. Assuming that, at that time, the Cape Fear Lumber Company took possession of the land, this action was instituted October 9, 1916; hence 20 years had not expired. If either the Cape Fear Lumber Company or plaintiff had remained in possession for 10 years, the deeds under which they entered, while invalid, and ineffectual to convey title, were color of title, such possession would have ripened into title. It is conceded that neither of these companies were in possession for the statutory period; hence, no title was acquired through this source. It is said:

249 F.—34

"The successive possession for twenty years gives rise to the presumption of a grant to the first taker at the beginning."

In this I concur.   It is further said:

"Starting with the first taker, the successive, adverse possessions may be tacked to make out the full period of 20 years from which a good title is presumed in the last taker to the successive possessors claiming the land as their own."

From this proposition the conclusion is reached that the plaintiff may tack the possession of the Cape Fear Lumber Company and its own possession, admittedly less than 20 years, to the prior possession of the Butters Lumber Company and Elliott, for the purpose of completing the 20 years and raising a presumption of a deed to itself.   In this conclusion I am unable to concur.   The presumption based upon Elliott's possession for 20 years exhausted its probative force when invoked to show title in him.   The title which vested in the Butters Lumber Company is based, not upon a presumption, but upon a valid deed from the owner, Elliott.   If a grant from the state to Elliott had been shown, and his deed to the Butters Lumber Company introduced, is it not clear that, upon the plaintiff's evidence, it would fail in this action?   The presumption of the existence of a grant or deed is as effectual, for the purpose of vesting title, as if a grant, or deed, had been introduced.   If the plaintiff is dependent upon Elliott's possession to raise the presumption that a grant or deed was executed to it, the evidence rebuts the presumption, and shows that the title is in the Butters Lumber Company.   In other words, having invoked the presumption to show title in Elliott and having shown that his title vested in the Butters Lumber Company, I am unable to perceive how it may again invoke the same presumption to show title in itself, which is contrary to the truth, as shown by its own evidence.

It is said, and in this I concur, that:

"Possession not obtained by a tortious act is prima facie evidence of title, and upon this the plaintiff may rest until the defendant justifies his invasion of the possession by proving either title in himself, or a license to enter, from the true owner."

This language is quoted from the opinion of the learned judge, who writes the opinion here, when a member of the Supreme Court of South Carolina.   The law is stated with his uniform clearness and accuracy. The distinction between the two cases is seen by reference to the facts stated in that case.   The judge says:

"The important question is thus raised, whether a plaintiff alleging *both title and possession* (italics mine) is entitled to recover damages upon proof of his possession and the invasion of it by the defendant, without giving proof that he has a perfect title."

This question is answered in the affirmative and sustained by an able, learned discussion, and citation of authority.   Beaufort Land & Investment Co. v. New River Lumber Co., 86 S. C. 358, 68 S. E. 637, 30 L. R. A. (N. S.) 243.   Here there is no allegation in the complaint that plaintiff was, at any time, in possession; but it is alleged that "the plaintiff was the owner and entitled to the possession of a tract of land," etc., and that "defendant, well knowing that plaintiff was

the owner, and entitled to the possession thereof, entered upon and cut and removed timber," etc. The action is not trespass quare clausum fregit, or for the invasion of plaintiff's possession, for manifest reasons. As said in the opinion, the title is in issue. The principle upon which the plaintiff in the case cited recovered cannot aid the plaintiff in this case; to entitle it to recover it must show, at least, prima facie title.

I concur in the opinion that defendant did not acquire title by the purchase at the foreclosure sale. If it acquired the equitable rights of the original mortgagee, they must be asserted and administered in a court of equity. While the plaintiff has not, as I respectfully think, acquired the legal title to the land, and cannot, upon its own showing in this action, recover the value of the timber alleged to have been cut by defendant, it would seem that it has acquired equitable rights, which will be protected and enforced in a court of equity; here its right to recover depends upon its showing that it had the legal title. I cannot think that it may recover of defendant, as it seeks to do, upon the evidence introduced before the District Court, the value of the timber, which was apparently the principal value of the land.

I think that the judgment of nonsuit should be sustained.